REUBEN F. BENTON v. THE FARMERS' MUTUAL FIRE INSURANCE COMPANY OF KENT COUNTY.

*Fire insurance—Location of property—Removal—"Contents" of building.*

1. A farmers' mutual fire insurance company insured a farm barn and its contents, without specifically describing the contents. Over eight years after the issuance of the policy, which had been kept in full force, the insured erected a new barn on another part of the farm, in which he stored the hay and unthreshed wheat raised on the farm that year, as also a portion of his tools and farming implements. The company had no notice of the erection of the new barn, or of the removal of the property. The barn and its contents were destroyed by fire. And it is held that the company is not liable for the contents of the barn, the permanent storage of the property in another building than that named in the policy having withdrawn it from the protection of the policy; citing *Lyons v. Insurance Co.*, 14 R. I. 109; *English v. Insurance Co.*, 55 Mich. 273.[1]

2. The term "stack" has a well-defined meaning, and cannot be said to include unthreshed wheat in a mow in a barn.

Error to Kent. (Grove, J.) Argued June 20, 1894. Decided October 16, 1894.

*Assumpsit.* Defendant brings error. Reversed, and no new trial granted. The facts are stated in the opinion.

*Myron H. Walker,* for appellant.

*Wesselius & Corbitt,* for plaintiff.

McGRATH, C. J. On the 4th of April, 1884, plaintiff made written application to defendant for insurance upon the following property, and in amounts named:

---

[1] For an exhaustive note on the location of movable property as affecting fire insurance thereon, see *Benton v. Insurance Co.*, 26 L. R. A. 237.

One dwelling-house ................................... $275 00
Contents in same ..................................... 300 00
One barn ............................................ 175 00
Contents in same ..................................... 300 00
One tool house ....................................... 75 00
Contents in same ..................................... 300 00
Stock on said farm, against lightning, in Kent
   county ........................................... 175 00

    Total ........................................... $1,600 00

—All situate on section 27, in the township of Bowne.

On the same day a policy was issued describing the property as:

One dwelling-house ................................... $275 00
On contents in same .................................. 300 00
One barn ............................................ 175 00
On contents in said barn ............................. 300 00
One tool house ....................................... 75 00
On contents in tool house ............................ 300 00
On live stock, against lightning, in Kent county. 175 00

    Total ........................................... $1,600 00

On January 26, 1889, the defendant executed and delivered to said plaintiff, in pursuance of an application of the same date, a certain other contract of insurance, as follows, to wit:

On one frame granary ................................. $100 00
On contents in said granary, or in stacks on farm. 600 00

    Total increase .................................. $700 00

On April 4, 1884, when said policy was issued, there were a barn and a tool house on said premises, being the ones mentioned in and covered by the policy of insurance of that date; and on the 26th day of January, 1889, there was a frame granary on said premises, being the one mentioned in said contract of increase. But the plaintiff afterwards considered that said tool house and barn had become unfit or insufficient for his purposes, and in 1891 commenced the erection of a new and larger barn on another part of said farm, which he completed in July,

1892, and in which he stored his grain from the harvest of 1892, and the tools, or a part of the tools, he then had and used upon said farm; and the new barn and said grain and tools therein stored as aforesaid were the ones destroyed by the fire mentioned in said declaration, which occurred, as therein stated, the 28th day of July, 1892. The old barn and tool house and said granary then stood, and still stand, on said premises, and they had contents therein at the time of said fire. Plaintiff procured a policy of insurance on the new barn in the German Baptist Mutual Fire Insurance Company for the sum of $1,100, which sum was paid after said fire. Defendant had no notice of the transfer of the tools or the grain to said new barn, or of the erection of said barn; and the plaintiff had no insurance thereon, unless the insurance mentioned in the declaration, and as a part of defendant's policy of insurance, covered the same. Said barn and its contents were destroyed by fire, caused by lightning, at the date aforesaid.

Plaintiff's proofs of loss covered unthreshed wheat, hay, and tools and implements, all contained and stored in the new barn. Plaintiff insists that the terms "contents in barn" and "contents in tool house" covered the articles, wherever situate.

The old barn and old tool house were still in use. Plaintiff had obtained another policy, in another company, on the new barn. The policy in this case was not for any given term, but was to continue in force so long as plaintiff continued to pay his assessments and remained a member of the defendant company. The barn risk was a permanent one, but in respect of the contents of the barn and tool house the risk was not limited to the contents on hand at the date of the policy, but was what is termed a "shifting risk," and covered substituted property. The only language that can be looked to for a description of the property insured is that specifying its situation.

There is a class of cases which hold that the words "contained in" or "being in" or "stored in," when used in a policy which is not a shifting policy, but which, independently of such terms, sufficiently describes property the use of which necessitates its temporary absence from the building, are considered as further description merely, and as indicating its place of deposit when not temporarily absent in the ordinary course.

In *Everett v. Insurance Co.*, 21 Minn. 76, the property was described in the application as "stored in barn on," etc., and in the policy as a "threshing machine," reference being made to the application for a more particular description.

In *Holbrook v. Insurance Co.*, 25 Minn. 229, the property was described as "36 mules, all contained in," etc.

In *McCluer v. Insurance Co.*, 43 Iowa, 349, a phaeton was destroyed while in a carriage shop for repairs.

In *Haws v. Fire Association*, 114 Penn. St. 431, certain horses, "all contained in," etc., were insured under a policy containing a lightning clause. One of the horses was killed by lightning while at pasture in a field on plaintiff's farm. The court say:

"It is true, in an insurance upon such personal property as household goods or a stock of merchandise, the words 'contained in a' particular building would seem to imply that the property insured should remain in such building, and that, if removed therefrom, the policy would not cover it. But in such cases the contract contemplates that the property shall remain in the building, and there are obvious reasons why a change of location would affect the insurance. The very nature of such property implies permanency in its location. But it is not so with a man's horse. It is of no use to him if kept in a stable. We can understand that if, in a fire policy, hay, straw, or grain is insured in a barn, the insurance would cease if removed to some other building. Such would be the reasonable meaning of the contract of insurance, and what the parties probably contemplated when they made it.

But none of this reasoning applies to a lightning clause upon horses or other stock. The terms and conditions to which such an insurance is subject must be such as are reasonably applicable to such kinds of insurance upon this particular species of property, and such, therefore, as the parties may be presumed to have had in view when the contract was made."

In *Peterson v. Insurance Co.*, 24 Iowa, 494, the policy covered plaintiff's seven horses, situated on·section 22, etc. While marketing his grain, plaintiff put up at an hotel, and placed his team in the hotel barn, and one of the horses was destroyed by fire.

In these cases the property was fully described without reference to the words describing its location, and, when destroyed, it was in a situation which from its very nature may well be deemed to have been within the contemplation of the parties at the inception of the policy. Lord Mansfield observed in *Pelly v. Governor, etc.*, 1 Burrow, 341, that the insurer, in estimating the price at which he is willing to indemnify the insured, must have under his consideration the nature of the business, and the usual course and manner of conducting it, and everything done in the usual course must have been foreseen and in contemplation at the time he engaged, and that he takes the risk upon the supposition that what is usual or necessary will be done.

The rule has been extended by some authorities to cases where the policy has described a class of property and the risk a shifting one. In *Longueville v. Assurance Co.*, 51 Iowa, 553, certain wearing apparel was burned while being worn.

In *Noyes v. Insurance Co.*, 64 Wis. 415, a dolman was burned while at a furrier's for repair.

In *De Graff v. Insurance Co.*, 38 Minn. 501, the policy covered "$3,000 on his wood barn; $2,500 on live stock therein." The policy contained a lightning clause. A few

weeks before the loss, plaintiff put one of the horses into a new barn, which had been built, where she remained until killed by lightning. The removal was alleged to have been but temporary. The court say:

"Words descriptive of location might, as to one class of property, or as to one kind of insurance, be treated as a statement of a fact relating to the risk, and as amounting to a stipulation or condition that the property should remain there; while as to another class of property, or as to the other kind of insurance, it might be construed as mere description for the purposes of identification. This action is to recover for the loss of live stock by lightning, and the language of the policy must therefore be construed as applied to insurance upon that particular species of property. The parties must be presumed to have known that danger from lightning exists almost wholly in the summer, when live stock is out in the fields. No man of common sense would take a policy of insurance against lightning which only covered his stock when in a particular barn. Such stock cannot well be, and is not usually, kept permanently in a building. The ordinary uses to which it is put forbid it; and the usual and proper treatment of it requires that it be turned out to pasture about one-half the year at least. According to the usual course of farming operations, it is not customary to treat an animal, even when housed, as attached to some particular building, as a part of its contents, but to change its place of stabling from time to time, as necessity or convenience may require. The parties must be presumed to have had all these facts in view when they made this contract. If appellant's contention be correct, this policy would not cover a loss occurring while the stock is out at pasture, during the summer, for that could hardly be called a 'temporary removal' from the barn for some temporary purpose incident to the ordinary use and enjoyment of the property.     *     *     *
Our conclusion is that the statement in the policy that the stock was in this barn is not a promissory stipulation on the part of the insured, or a condition of insurance on part of the insurer, that such location should remain unchanged, but as to that class of property, and as to that kind of insurance, at least, is mere matter of description for identification of the property insured, indicating that it was the stock which was usually kept in that barn at that time."

In *Insurance Co. v. Elliott*, 85 Va. 962, the policy covered "carriages, buggies, hacks, and harness" in a building occupied as a livery and sales stable, and certain of the vehicles were in a repair shop when destroyed. But see *Bradbury v. Insurance Co.*, 80 Me. 396.

In none of these cases, however, was the property described simply as contents of the building named, nor was the *situs* of the property (when not in use) permanently changed.

In *Wildey v. Insurance Co.*, 52 Mich. 446, the policy covered "personal farm property in buildings and on farm." The by-laws of the company did not allow it to insure village property that was within 100 feet of other buildings. A horse was destroyed by fire while in the barn of a village hotel that stood within 100 feet of other buildings. The Court in that case say that, where particular property is specified as covered by the risk, it may well be held covered though moved elsewhere, unless there are clear provisions to the contrary; but, where property is only insured as farm property, it may be so restricted as to raise very different presumptions. The defendant was, however, held not liable, on the ground that there could be no implied liability where an express undertaking was forbidden.

In *English v. Insurance Co.*, 55 Mich. 273, the policy insured household goods, furniture, clothing, etc., "all contained in his two-story frame dwelling-house and additions, occupied as a residence." A fire occurred, which rendered the house uninhabitable, and some of the household goods were removed to and stored in the barn. About a month afterwards the barn was burned, and it was held that there could be no recovery for the household goods destroyed in the barn.

In *Association v. Kryder*, 5 Ind. App. 430, the description was precisely like that in the present case. The

policy, however, contained a lightning clause. While approaching the barn with a load of wheat, two horses, which were usually kept in the barn, were killed by lightning. The court held that the language "contents therein" referred to the contents at the time of the loss of the barn, and that there could be no recovery. In that case, however, the property insured was animate property; there was a lightning clause in the policy; the insurance of that class of property was contemplated, and its use in the ordinary and usual course rendered temporary absence from the barn necessary; and it is unnecessary to follow the case.

The general rule is that place and location is of the essence of the risk. 1 Wood, Ins. § 47; 2 May, Ins. §§ 401a, 401b. No case has been called to our attention as coming within any of the exceptions to the rule where the property has been described as household goods or stores contained in a certain dwelling, or as a stock of goods in a certain store, or as farm products contained in a barn, or simply as the contents of a dwelling, store, or barn, where the property consisted of articles having a permanent location for use, sale, or consumption, and its ordinary use did not involve the necessity for temporary removal. Again, every case presented has been one where the property has been destroyed while in a situation incident to its use, enjoyment, or repair. Nor has a case been suggested or found where the property has been permanently removed from the abiding place named in the policy, stored or kept elsewhere, and destroyed while in such new place of deposit. In *Lyons v. Insurance Co.*, 14 R. I. 109, it was expressly held that a permanent removal of the property from the place where insured would withdraw it from the protection of the policy. To the same effect is *English v. Insurance Co.*, 55 Mich. 273.

This disposes of the plaintiff's claim for hay, tools, and implements.

Respecting the grain, the policy covers grain in the granary and in stacks. The term "stack" has a well-defined meaning, and cannot be said to include grain in a mow in a barn.

The judgment is therefore reversed, and a new trial denied.

Long, Grant, and Hooker, JJ., concurred. Montgomery, J., did not sit.