## Cleveland, Cincinnati, Chicago & St. Louis Railway Company *v.* Feight et al.

[No. 5,972. Filed March 19, 1908.]

1. CORPORATIONS.—*De Facto.*—*Collateral Attack.*— *De facto* corporations are subject to a direct, but not to a collateral, attack. p. 422.

2. SAME.—*De Facto.*—*Essentials.*—Essential to the existence of a *de facto* corporation are (1) a valid law under which such a corporation might be formed; (2) a *bona fide* attempt to organize the corporation under such law, and (3) an actual exercise of corporate power. p. 422.

3. SAME.—*De Facto.*—*Interurban Railroads.*—*Consolidation.*—*Eligibility of Constituents.*—An interurban railroad, formed by the consolidation of an Ohio and an Indiana interurban railroad corporation, is at least a *de facto* corporation, though the Indiana corporation had, at the time of the consolidation, no railway constructed and in operation. p. 422.

4. INTERURBAN RAILROADS.—*Additional Servitude.*—The use of a street for the purpose of operating an interurban railroad does not constitute an additional servitude entitling frontagers to compensation.   p. 425.

From Randolph Circuit Court; *John W. Macy,* Judge.

Suit by the Cleveland, Cincinnati, Chicago & St. Louis Railway Company against John E. Feight and others.   From a decree for defendants, plaintiff appeals.   *Affirmed.*

*Frank L. Littleton, L. J. Hackney, A. O. Marsh* and *Nichols, Goodrich & Bales,* for appellant.

*James S. Engle, F. S. Caldwell, W. G. Parry* and *Theodore Shockney,* for appellees.

HADLEY, P. J.—This is a suit instituted in the Randolph Circuit Court by the appellant against John E. Feight, Joseph E. Lowes, Charles M. Anderson, Ralph E. DeWeese, Walton B. Gebhart, Theodore Shockney, Mortimer A. Munn, Edward P. Roberts, ———— Abbott, John Doe, Richard Roe, John Smith, Chase Construction Company, appellees, to enjoin said appellees from entering upon appellant's right of way at Main street in the town of Farmland, and constructing thereon a crossing for the appellees' interurban railway, and from taking any steps to interfere with appellant's tracks and railway property.

The substantial averments of the complaint involved in this consideration are to the effect that appellees Lowes, Feight, Anderson, DeWeese and Shockney pretend and confess to be stockholders in, and officers of, a pretended electric railway company; that they have in their employ the other appellees; that all of said appellees are engaged in constructing a contemplated electric railway; that appellant is a railway corporation organized and existing under the laws of the State of Indiana, and operates a railway from Indianapolis, Indiana, to Cleveland, Ohio; that appellant's said roadway passes through said town of Farmland, and has for forty years been operated at grade across Main street in said

town upon a right of way which it owns in fee; that it owns in fee a tract 800 by 200 feet; that Main street crosses said tract, which runs 75 feet north of appellant's main track and 125 feet south of the same, subject only to the easement of said Main street; that it operates a steam road on said line; that appellees were engaged in the construction of an inter-. urban electric railway, to be operated by electric power exclusively, for the carriage of passengers, freight, express and mail matter from Dayton, Ohio, to the city of Muncie, Indiana; that they are threatening and contemplating the construction of said electric railway from the point on Main street where said work has been commenced, upon and over said street to, and across, the right of way and railway tracks of this appellant, and, when so constructed, the operation of said line of electric railway on said street and over said right of way and railway tracks; that appellees threaten and intend to cut and sever the rails of appellant's railway tracks across said Main street, and install in lieu thereof certain frogs and connections of their own without the consent and authority of appellant, and threaten to cross at grade said tracks of appellant in said Main street; that appellees have not procured any right of way by contract with appellant or otherwise over said Main street, or that part of Main street which is a part of and located upon appellant's real estate, and that appellees have not obtained the consent of appellant so to cross appellant's said railway tracks or real estate, and have not instituted any proceedings to condemn the same; that such crossing will seriously interfere with the free use of appellant's railway, and will impair and injure its franchise; that appellees do not propose to put in and maintain an interlocking system at said crossing; that appellees have not secured or attempted to secure a right or authority to cut the rails of appellant's tracks and construct said railway by any agreement with appellant, decree or judgment of court or otherwise; that appellees have no right or authority from the board of trus-

tees of the town of Farmland to construct said electric railway along Main street.

There are numerous other averments in said complaint unnecessary to set out, as they do not affect the question presented. To this complaint appellees answered in their own behalf to the effect that they have not been themselves engaged in the construction of any railway of any nature or kind at the point named by the appellant in its complaint, or at any other point, and that they are not for themselves doing any of the things or threatening to do any of the things alleged by appellant in its complaint, but say that appellees Lowes, Feight, Gebhart and Anderson are president, secretary, treasurer and vice-president, respectively, of the Dayton & Muncie Traction Company, a corporation duly and legally incorporated by virtue of the consolidation, under the laws of said states, of the Greenville & Union City Traction Company, a corporation duly and legally incorporated under the laws of the state of Ohio for the construction and operation of an electric street railway in the city of Greenville and in the villages of Hill Grove and Union City in said state, and for the connection of said systems in said cities and villages by an interurban electric street railway from said city of Greenville through said villages of Hill Grove and Union City, terminating at the state line in said Union City, and the Winchester & Muncie Traction Company, a corporation duly incorporated under the laws of the State of Indiana for the purpose of constructing, owning and operating a system of electric street railways in the cities of Union City, Winchester and Muncie, and in said town of Farmland, and of connecting said systems in said cities and towns by electric interurban and suburban street railways between said cities and towns from said state line at the point of the terminus of said Greenville & Union City Traction Company's street railway over the streets of said Union City, Winchester, Farmland and Muncie, and connecting the same by interurban and suburban railways between said cities

and towns. Appellees subsequently averred that they appeared for themselves only and not for said Dayton & Muncie Traction Company or either of the said mentioned corporations. The answer then avers the granting of a franchise to said traction company to construct and operate a line of street railway along said Main street in the town of Farmland, and along and over the point of intersection with said railway tracks of appellant, as set out in the complaint, which franchise is in full force and effect. It avers the intention of said traction company to make such crossing so as not to interfere with the free use of appellant's road and side-tracks so crossed, and to put in such interlocking devices or such protective devices as the law of the State may require, using in every particular all of the important safeguards and machinery used in the operation of electric railways, and managing its cars at said point, by stopping the same, so as to insure safety and minimize danger of accident. Appellees further aver the intention of said traction company to operate combination passenger-and baggage-cars, and to haul and transport passengers, express, baggage, mail and small parcels of freight, the cars to be operated separately and not in trains, and all of said cars to be modern in build and equipment and supplied with all appliances for stopping, starting and controlling the same.

The answer sets out in full two ordinances, one, the original ordinance, and the other supplemental thereto, granting said Dayton & Muncie Traction Company the right so to use the streets of the city of Farmland. The answer then sets out the statutes of the state of Ohio, authorizing the consolidation of traction companies in Ohio with traction companies of other states. A demurrer was filed to this answer, which was overruled. Appellant filed an amended reply in two paragraphs: (1) By general denial; (2) an affirmative paragraph which avers in substance that there is no such corporation as the Dayton & Muncie Traction Company and never was; that at the time of said consolida-

tion there was no law of the State of Indiana authorizing such consolidation. It then sets out facts upon which it bases its averment that there is no such corporation or consolidation. There are other averments of the reply that are not important. Upon the issues thus formed, trial was had and decree entered for appellees, refusing an injunction.

The questions presented upon the exceptions reserved by appellant to the various rulings of the court may be stated in two propositions: First, that the Dayton & Muncie Traction Company was not a corporation either *de facto* or *de jure;* second, the street and interurban railway being constructed along Main street and over appellant's tracks and right of way was a commercial railway, and hence an additional servitude on the street, and had no right to enter upon or pass over the property of appellant without consent, or condemnation and compensation. It is the theory of appellant that said Dayton & Muncie Traction Company was not a corporation, by reason of the fact that it had not been properly incorporated under the laws of this State, and hence appellees were acting in their individual capacities; that said pretended corporation was incapable of being sued or brought into court in any manner; that the franchise granted said pretended corporation by the town trustees of Farmland was a nullity, for the reasons (1) ·that the grantee had no existence; (2) that by the terms of said franchise it was not effective until accepted by the grantee; that, notwithstanding said franchise was apparently accepted by said Dayton & Muncie Traction Company, it was, in effect, no acceptance, since said company had no existence and could not make a valid acceptance. It would appear then, if appellant's contention that said Dayton & Muncie Traction Company had no corporate existence either *de facto* or *de jure,* that the injunction prayed for should have been granted, since all of the rights of appellees under their own averments, and the evidence, to construct said railway along

said street and over said tracks and right of way were by virtue of the authority granted said traction company by the board of trustees of said town. It is urged by appellant that the attempted consolidation of said two companies was ineffective and void, for the reason that, although there is a statute in this State authorizing the consolidation of street and interurban railways within the State, and street and interurban railways in adjoining states, such statute authorizes such consolidation only when the domestic railway has been constructed and is being operated; that in this case the Union City, Winchester & Muncie Traction Company, the constituent domestic corporation, did not at the time of such attempted consolidation have any railway constructed and operating, and it was therefore ineligible to enter into such a consolidation. Acts 1903, p. 181, §5690 Burns 1908.

Appellees meet this contention with the proposition that the Dayton & Muncie Traction Company was in fact a *de jure,* or at least a *de facto,* corporation, and, being such, its authority to act as a corporation cannot thus be collaterally assailed.

1.  That the corporate existence of a *de facto* corporation can only be questioned by a direct proceeding brought for that purpose, and not collaterally, is well settled. *Clark v. American, etc., Coal Co.* (1905), 165 Ind. 213, 112 Am. St. 217, and authorities there cited. And it is said in the case last cited: "It is essential to the existence of a *de facto* corporation, however, that there be (1)

2.  a valid law under which a corporation with the powers assumed might be incorporated; (2) a *bona fide* attempt to organize a corporation under such law, and (3) an actual exercise of corporate power."

It is admitted that there exists a law authorizing the consolidation of domestic street and interurban railway corporations with foreign street and interurban railway

3.  corporations, and that such consolidated company would possess all of the powers claimed or exercised

by the Dayton & Muncie Traction Company; that there was
a *bona fide* attempt by said company to organize under that
law, and an actual exercise of corporate functions. But it is
insisted that the constituent domestic corporation was inel-
igible to enter into such consolidation, for the reason that it
had no street railway constructed and operating. This con-
tention is so fully met by the opinion of Judge Taft in the
case of *Continental Trust Co.* v. *Toledo, etc., R. Co.* (1897),
82 Fed. 642, 649, that we quote: ''It is said that the prin-
ciple that the acts of a *de facto* corporation can never be as-
sailed collaterally has no application where the law makes
no provision for a *de jure* corporation of the kind which the
one in question here purports to be, and that, as there was no
law of Illinois or Ohio authorizing the consolidation of the
three corporations which it was attempted here to consoli-
date, there could be no *de jure* corporation, and so no *de
facto* corporation. * * * It is certainly true that the
rule of public policy which validates, for all purposes save
that of direct inquiry by the sovereign, acts of those who,
without lawful authority, assume an official or corporate
character, and actually exercise official or corporate func-
tions, must have the limitation that the character assumed
and functions exercised are those which it is the declared
purpose of the sovereign to have some one lawfully assume
and discharge. * * *. It is to be observed, however,
* * * that the validity of the acts of a *de facto* officer or
corporation in a collateral proceeding is not affected by the
circumstances that the particular persons or constituents as-
suming and discharging the official or corporate functions
could not by any steps have acquired the requisite legal
qualifications for lawfully exercising such functions. They
may be completely ineligible, and yet, if they are allowed to
discharge the duties and exercise the powers of an office or a
corporation which the law recognizes as in existence or
capable of lawful existence, their acts as such cannot be im-
peached as invalid in a collateral proceeding. * * * And

it may be safely stated as the rule that when persons assume to act as a body, and are permitted by acquiescence of the public and the state to act, as if they were legally a particular kind of corporation, for the organization, existence, and continuance of which there is express recognition by general law, such body of persons is a corporation *de facto,* although the particular persons thus exercising the franchise of being a corporation may have been ineligible and incapacitated by the law to do so. In the light of this statement of the law, the averments of the petitions are quite insufficient to show that the Toledo, St. Louis & Kansas City Railroad Company was not at least a *de facto* corporation. It is not denied that under the general laws of Illinois, Ohio, and Indiana a corporation may be organized by consolidation which shall be a corporation of each of the three states.  \*  \*  \*  If there could be a *de jure* consolidated corporation of the three states, as there undoubtedly could be, then the Kansas City corporation, in exercising the functions of such a consolidated corporation, was a *de facto* corporation of the three states.''

This case was afterwards affirmed by the Circuit Court of Appeals. *Toledo, etc., R. Co.* v. *Continental Trust Co.* (1899), 95 Fed. 497. In the course of the opinion Judge Lurton, speaking for the court, says: ''The fact that there might be under the law of Illinois a consolidated company composed of an Illinois corporation and corporations of other states, with the powers claimed by the Toledo, St. Louis & Kansas City Railroad Company, would constitute it a *de facto* corporation, although the particular companies thus united might not possess all of the qualifications required by the Illinois statute. A defect in the qualification of some of the constituent companies might affect the *de jure* character of such an organization, and, when challenged by the state, demand a judgment of ouster. The test of a *de facto* corporation is this: Was there a law under which there might have been a *de jure* corporation of the kind,

character, and class to which the organization in question apparently belongs? It is the apparent legality of the organization which gives it its *de facto* character. If there was no law under which an Illinois consolidated corporation could exist, there could be no *de facto* consolidated corporation. The possibility of a *de jure* corporation is the only condition requisite to a *de facto* corporation. It is not a sound test that the particular constituents could not have become a *de jure* consolidated corporation. That would open every such organization to parol attack, and destroy its *de facto* character, not by showing the impossibility of a *de jure* corporation of the kind in question, but by evidence affecting the internal history of the parts composing the whole." These opinions are supported by *Norton* v. *Shelby County* (1886), 118 U. S. 425, 6 Sup. Ct. 1121, 30 L. Ed. 178; *Ashley* v. *Board, etc.* (1893), 16 U. S. App. 656, 60 Fed. 55, 8 C. C. A. 455; *State* v. *Carroll* (1871), 38 Conn. 449, 9 Am. Rep. 409; *Blackburn* v. *State* (1859), 3 Head (Tenn.) *689, and are in accord with *Clark* v. *American, etc., Coal Co., supra,* and *Doty* v. *Patterson* (1900), 155 Ind. 60.

It is clear under the above authorities that said Dayton & Muncie Traction Company was a *de facto* corporation, and its power to act as such cannot be questioned in this proceeding. It is therefore unnecessary for us to determine whether said traction company was a corporation *de jure.* It must therefore be assumed in this case that said traction company had all the powers and authority, and was entitled to the rights and privileges, of a consolidated street and interurban railway, which, under the law of its creation, gave it the rights and privileges of a domestic street and interurban railway. §5686 Burns 1908, Acts 1899, p. 378, §2.

If, therefore, such street and interurban railway had the right to cross the tracks and right of way of appellant under the circumstances here presented, the injunction was

4. properly refused. That it has such right has been determined by the cases of *Mordhurst* v. *Ft. Wayne,*

*etc., Traction Co.* (1904), 163 Ind. 268, 66 L. R. A. 105, 106 Am. St. 222; *Kinsey* v. *Union Traction Co.* (1908), 169 Ind. 563; *South East, etc., R. Co.* v. *Evansville, etc., R. Co.* (1907), 169 Ind. 339; *Michigan Cent. R. Co.* v. *Hammond, etc., Electric R. Co.* (1908), 42 Ind. App. —; *Chicago, etc., R. Co.* v. *Whiting, etc., St. R. Co.* (1894), 139 Ind. 297, 26 L. R. A. 337, 47 Am. St. 264.

There are various other matters presented, but they all depend upon the central questions here discussed and decided. It is urged that this court should consider and determine the character of the crossing that should be made in the event we should decide appellees had the right to cross. The lower court did not determine this question, and it does not appear that it was considered and passed upon. Whether such court might have done so is unnecessary to decide. The record does not show such an unusual condition as to warrant us in assuming that a crossing may not be made reasonably safe in the ordinary modes.

Judgment affirmed.