## Farmers' Mutual et al. v. Reser, Executrix.

[No. 6,466.    Filed May 13, 1909.]

1. Pleading.— Complaint.— Insurance.— Parties.— "Farmers' Mutual."—Partnership.—A complaint against the "Farmers' Mutual," a partnership doing an insurance business, is insufficient, since the individuals only are liable to be sued, unless they have prescribed some other method in the articles of copartnership. p. 637.

2. Pleading. — Complaint. — Insurance.— Parties.— Trustees.— A complaint against the trustees of an insurance copartnership, where the articles of copartnership provide that they may be sued instead of the individual partners, must show that they are trustees, and must be against them officially. p. 638.

3. Pleading.— Complaint.— Parties.— Corporations.— A complaint against the "Farmers' Mutual," the complaint alleging that such company is a copartnership, does not prevent the defendant, though it answered in such name, from denying the corporate existence of such a company. p. 638.

4. Pleading.—Complaint.—Corporations.—De Facto.—Essentials.— Estoppel.—To constitute a de facto corporation it is necessary to show (1) that a law exists under which such company might be organized, (2) a bona fide attempt to organize under such law, and (3) an actual exercise of corporate power. And a complaint against the "Farmers' Mutual," alleging that it is a copartnership and failing to allege the above essential facts, does not show a de facto corporation; nor can the rules of estoppel against denying corporate existence when associations have acted as such be invoked where such association never assumed to be a corporation and the interested party did not deal with it as such. p. 639.

5. Insurance.—"Grain Stacks."—A fire and lightning policy insuring "grain * * * stacks on the farm," covers wheat ricked under a shed which is open on the sides and closed on the gable ends. p. 639.

6. INSURANCE.—*Policy.*—*Construction.*—*Doubts.*—Doubts as to the meaning of an insurance policy will be resolved in favor of the assured. p. 641.

From Clinton Circuit Court; *Joseph Claybaugh,* Judge.

Action by Sarah Reser, as executrix of the will of Harvey Reser, deceased, against the Farmers' Mutual and others. From a judgment for plaintiff, defendants appeal. *Reversed.*

*Davidson & Boulds* and *Guenther & Clark,* for appellants. *James V. Kent* and *Kumler & Gaylord,* for appellee.

HADLEY, J.—This was an action commenced by appellee's decedent against appellants, on a policy of insurance issued by the appellant Farmers' Mutual, of which the other appellants are the trustees. The complaint begins as follows: "The plaintiff complains of the defendant and says: That the Farmers' Mutual is a copartnership doing a fire insurance business under the partnership name of the 'Farmers Mutual,' and that James M. Bell, David F. Clark, Francis M. Gable, George M. Clark, Calvin Dill, F. H. Youndt and John Deardorf are its directors and trustees; that on August 29, 1896, the defendant, in consideration of $1, in hand paid, and in further consideration of the terms and provisions of the articles of copartnership of said company, of which the plaintiff was on said day, ever since has been, and now is, a member, did, by its policy of insurance, insure plaintiff from loss by lightning, to the amount of $600, on grain stacks on his farm in Tippecanoe county, Indiana, from August 29, 1896, at 12 o'clock noon, until December 31, 1968, at 12 o'clock noon, a copy of which policy of insurance, containing said articles of copartnership, is filed herewith, marked exhibit A, made a part hereof and reads as follows, to wit: * * * And the plaintiff further avers that he has duly performed all of the conditions on his part to be performed, and that on July 26, 1902, he was the owner of wheat stacked on his said farm, of the value of $1,000, and that afterwards, on said day, and while he was

the owner thereof, said wheat, then in a stack on his said farm, was totally destroyed by lightning, to his damage to the amount of $1,000; that the plaintiff, within a reasonable time thereafter, on July —, 1902, notified defendants of said loss, and demanded payment therefor; that afterwards, on August 23, 1902, and in response to a demand for the payment of said loss, defendants denied all liability to plaintiff on account of said loss, and refused to pay the same or any part thereof, and thereby waived any further proof of said loss; that no part of said loss has been paid, though frequently demanded, and that the same is now due.'' The policy of insurance exhibited contains the following provisions:

> ''In consideration of the sum of $1, and in further consideration of the terms and provisions of the articles of copartnership of said company, of which the party insured is a member, do hereby insure Harvey Reser in the sum of $5,165 on the following property, to wit:  *  *  *  Contents of said barn, including loss on stock, grain or hay stacks on the farm, by lightning, or on stock when in care of owner.  *  *  *  Against loss or damage by fire or lightning, not exceeding the sum or sums insured on each piece or parcel thereof, nor exceeding the interest of the assured in such property.  *  *  *  Subject to the statement in the application and survey (if any) furnished by the said assured, and numbered 2,007, and to the conditions and terms of said articles of copartnership, both of which are made part of the contract.''

As a part of the policy, the constitution and by-laws are set out. By these it appears that the members of said company are associated together as a copartnership under the name and style of the ''Farmers' Mutual,'' for the purpose of mutual insurance against loss by fire and lightning; that a person to be insured must become a member; that no capital is provided for except a sum sufficient to defray expenses, the business of this company to be transacted by its officers and its executive committee and other agents. It provides for the same officers, and prescribes their duties, as is usual in case of corporations. The thirteenth article is as follows:

"The executive committee shall constitute and be trustees of the copartnership, who shall be, and hereby are, intrusted with the collection, control and proper disbursements of all moneys. And all suits on behalf of or against any member, or by or against any person contracting with the copartnership, shall be brought in the name of said trustees, as such, and in any such suit it shall not be necessary to make parties of all the individual members of, the copartnership."

The by-laws prescribe the rules for the transaction of business and the conditions of the policy, and direct how the financial affairs shall be managed and controlled. Section ten is as follows.

"The executive committee shall always stand and be indemnified by the copartnership and saved harmless because of any policy issued or act done in pursuance of their duties under the articles of copartnership or by-laws of the same, nor shall one be liable for any neglect or misdeed of any other one."

Throughout said articles, wherever reference is made to the company, it is always mentioned as a copartnership. To this complaint appellants separately demurred for want of facts, which demurrers were overruled. Appellants separately filed answers in general denial. Trial was had, and, upon request, the court made a special finding of facts and stated conclusions of law thereon, to each of which conclusions appellants separately excepted. It is urged against the complaint that Farmers' Mutual is not a party that may be sued.

It is apparent from the averments of the complaint that appellant company, called Farmers' Mutual, is an association of individuals, partaking of the nature of a co-

1. partnership. The averments of the complaint, including the constitution and by-laws, which are a part thereof, clearly and affirmatively show this. As said in the case of *Karges Furniture Co.* v. *Amalgamated, etc., Union* (1905), 165 Ind. 421, 2 L. R. A. (N. S.) 788: "On the other hand, in the absence of an enabling statute defining

the rights and liabilities of the members, societies, associations, partnerships, and other bodies, combined under their own rule, for their own private benefit, and without any express sanction of law, are not, in the collective capacity and name, recognized at common law as having any legal existence distinct from their members; hence no power to sue or be sued in the company name. Such unincorporated associations, so far as their rights and liabilities are concerned, are rated as partnerships, and to enforce a right either for or against them, as in partnerships, the names of all the individual members must be set forth either as plaintiffs' or defendants.'' Under the foregoing authority, it is clear that appellant company could not be sued in the company name, ''Farmers' Mutual,'' but suit should be brought against all the members, unless by the articles another mode is authorized.

That the difficulties of suing or being sued were appreciated by the organizers of the company is clear from the thirteenth article heretofore set out, and by it a simple 2. method of bringing suit by or against the association is provided. That appellee sought to conform to this section seems apparent, since it made the trustees of the association parties defendant, but it does not aver that they are sued as such. In fact, there is no averment explaining why they are made defendants. As we have seen, the averments of the complaint do not show a cause of action against Farmers' Mutual. Since it is shown by the other averments to have no legal entity, and since no facts are averred showing a cause of action against its trustees as such, or as individuals, the complaint must be held bad.

Appellee insists that since the name Farmers' Mutual imports a legal entity, it implies that the association is a corporation, and its having appeared and answered in 3. such name it cannot now deny its corporate existence, and many cases are cited to support this position. If the complaint itself did not affirmatively show that

appellant was not a corporation, appellee's contention would be correct; but, in the face of appellee's positive averments, we cannot see how she now can assert the contrary. It is also claimed that by the averments of the complaint the

4. Farmers' Mutual is shown to be a *de facto* corporation. It is held to be essential to the existence of a *de facto* corporation that there be: (1) A valid law under which a corporation with the powers assumed might be incorporated; (2) a *bona fide* attempt to organize a corporation under such law; (3) an actual exercise of corporate power. *Cleveland, etc., R. Co.* v. *Feight* (1908), 41 Ind. App. 416. The absence of any one of the requirements just stated defeats the claim. It is shown by the averments of the complaint and finding of facts that there was no effort or intention to incorporate the association, and it therefore cannot be held to be a *de facto* corporation. Neither can the rules of estoppel against denying corporate existence when associations have assumed to act as such, or where parties have dealt with them as such, affect the question at bar, since it is clear that the association never assumed to be a corporation, and that appellee's decedent did not deal with it as such. The policy he received by its terms and provisions told him that the association of which he thereby became a member was neither a corporation nor claimed to be such. Neither a corporate seal nor a corporate name was affixed or subscribed to the policy, the policy being signed by the president and secretary in their respective names only.

Our decision on the foregoing questions determines our action on this appeal, but it does not settle the real question at issue between the parties, and, since this cause

5. must be reversed and sent back for a retrial in the interest of a speedy termination of the litigation, it is our duty to pass upon the merits of the controversy, since this question will necessarily arise upon a second trial. Appellants insist that the company is not liable for any amount on account of said loss, for the reason that the grain de-

stroyed was not covered by the policy of insurance. That portion of the policy in controversy reads:

"Contents of said barn, including loss on stock, grain or hay stacks on the farm, by lightning, or on stock in care of owner, $600."

The facts, as found by the court, and about which there seems to be no dispute, are that the grain in question, on July 17, 1902, was stacked on the farm of appellee's decedent, the same farm as described in the policy; that it was in two stacks, the stacks being constructed by placing the butts of the sheaves outward with the middle or center well filled, being the way wheat is usually stacked, except that it was not turned to a point at the top. It was stacked under two sheds, said sheds being each eighteen feet wide, thirty-six feet long, and eighteen feet high from the ground to where the roof commenced, being open on all sides except the gable ends, which were enclosed down to the square, and with a shingle roof; that said wheat was at the time owned by Harvey Reser, appellee's decedent, and his son, William M. Reser, each owning a one-half interest therein; that on said July 17, said stacks of wheat were struck by lightning, and were thereby wholly destroyed. The objection is stated by appellants in their brief as follows: "Because the special finding of facts shows that the wheat, at the time of the fire, was not in stacks on the farm, but packed in permanent sheds with shingle roofs." That it was on the farm is not denied; that it was in a stack cannot be successfully controverted. A stack is defined as being "a pile of grain in the sheaf, or of hay, straw, peas, etc., gathered into a circular or rectangular form, often, when of large size, coming to a point or ridge at the top, and thatched to protect it from the weather." Century Dict. In the case of *Reg.* v. *Munson* (1847), 2 Cox C. C. 186, defendant was accused of setting fire to a stack of haulm. It was proved that the haulm was carted in from the field and "stacked" under cover in a building that had been used as

a stable.    It was contended that this could not be called a
"stack," and therefore there was a variance between the
charge and the proof.    Coleridge, J., says:    "I do not think
it essentially necessary to the character of a 'stack' that it
should be erected out of doors.    It is enough if the material
be collected direct in the field, and 'stacked' in a building."
Certainly whether the thatch or covering is of straw or
boards cannot affect the question, and whether the straw or
boards rest upon the top of the stack or are raised above it
is immaterial.

We do not see wherein the grain in question fails to come
within the description in the policy.    To say that the policy
applies only to grain in a stack that has no covering but the
heavens would be to write something in the policy that was
omitted by the insurers when they prepared the same.    This
we will not do.    On the contrary, in case of doubt as
6.   to the meaning of a provision in a policy, we will so
construe it as to effectuate its purpose, and solve all
ambiguities in favor of the insured, and secure to him, if pos-
sible, what he has paid for.    *Penn Mut. Life Ins. Co.* v.
*Wiler* (1885), 100 Ind. 92; *Aetna Ins. Co.* v. *Strout* (1896),
16 Ind. App. 160; *Union Cent. Life Ins. Co.* v. *Jones* (1897),
17 Ind. App. 592.    In the case of *Aetna Ins. Co.* v. *Strout,
supra,* the court, quoting from *Imperial Fire Ins. Co.* v. *Coos
County* (1894), 151 U. S. 452, 14 Sup. Ct. 379, 38 L. Ed.
231, used this language:    "It is settled, as laid down by
this court, in *Thompson* v. *Phenix Ins. Co.* [1890], 136 U.
S. 287, 10 Sup. Ct. 1019, 34 L. Ed. 408, that, when an insur-
ance contract is so drawn as to be ambiguous, or to require
interpretation, or to be fairly susceptible of two different
constructions, so that reasonably intelligent men on reading
the contract would honestly differ as to the meaning there-
of, that construction will be adopted which is most favor-
able to the insured."    This rule governs in our own State.
Citing *Penn Mut. Life Ins. Co.* v. *Wiler, supra; Rogers* v.
*Phenix Ins. Co.* (1890), 121 Ind. 570; *Standard Life, etc.,*

*Ins. Co.* v. *Martin* (1893), 133 Ind. 376; *Indiana Farmers, etc., Ins. Co.* v. *Rundell* (1893), 7 Ind. App. 426.

Counsel for appellant assert that "the location of the property insured is of the essence of the contract; therefore recovery cannot be had where the property, at the time of loss, was not where the policy described it as being"—and cite many cases in support thereof. The proposition is incontrovertible, and we agree with counsel and have no fault to find with their authorities, further than that they have no application to the case at bar. As we have seen, the property was located as described in the policy, and what appellants are attempting to do is to put a limitation, not found in the policy, upon that description. Grain in a stack under a shed, as this grain was, is clearly distinguishable from grain piled in a mow in a barn, as in the case of *Benton* v. *Farmers, etc., Ins. Co.* (1894), 102 Mich. 281, 60 N. W. 691, 26 L. R. A. 237. Other questions are presented, but they will not necessarily arise on a retrial, and are therefore not considered.

Judgment reversed, with instructions to grant a new trial, sustain the demurrers to the complaint, and grant leave to amend the same.