WILSON v. FARMERS' MUTUAL FIRE INSURANCE CO.

FIRE INSURANCE—LOCATION OF PROPERTY INSURED — ESTOPPEL— QUESTION FOR JURY.

    A farmers' mutual fire insurance company insured certain farm buildings and their contents, without specifically describing the contents. Eight years later additional insurance was taken on the house and contents and the necessary changes were made in the policy. Plaintiffs had at that time erected a barn some distance away from the buildings insured and removed thereto certain machinery which had been formerly stored in the barns insured. There was testimony that at the time the additional insurance was arranged for, the question was raised as to whether the machinery stored in the new building was protected by the policy, and that defendant's officers who were present assented that it was. *Held*, that while it is the general rule that

place and location are of the essence of a risk, especially when the property insured is not otherwise described, yet it was a question properly submitted to the jury whether or not defendant was estopped by the action of its officers to demand the application of the rule.

Error to Lenawee; Chester, J. Submitted February 23, 1909. ( Docket No. 47.) Decided May 25, 1909.

Assumpsit by Horatio L. Wilson and another against the Farmers' Mutual Fire Insurance Company on a policy of insurance. There was judgment for plaintiffs, and defendant brings error. Affirmed.

*Bird & Sampson*, for appellant.

*Charles A. Wilson* and *Smith, Baldwin & Alexander*, for appellees.

The policy of insurance was issued upon the written application of the plaintiffs September 4, 1897; they becoming members of the defendant company. In August, 1903, additional insurance on the dwelling and its contents was arranged for and necessary changes made in the policy. Descriptions of property insured and amounts for which insured are here given :

| | |
|---|---|
| On frame house 26x30, 15x20, 14x16 | $1,200 |
| On contents therein | 500 |
| On barn 30x40, shed 20x80, cornhouse 14x20, henhouse 12x14, windmill and fixtures | 360 |
| On toolhouse 18x36 | 50 |
| On barn 30x40, 20-foot posts | 290 |
| On contents of barn buildings | 1,150 |
| | $3,550 |
| Added to dwelling house 20x26 | $1,050 |
|   "    " contents in dwg. house | 500 | 1,550 |
| | $5,100 |

The application for insurance describes a barn 30x40, shed 20x80, cornhouse 14x20, toolhouse 18x36, barn 30x40, 20-foot posts, and, as in the policy, the only reference to

contents of any of these buildings is in the item "Contents of barn buildings $1,150." Certain by-laws of defendant are printed upon the policy of insurance, among them the following:

(19) "All stacks standing on farms of insured shall be considered as contents of barns, and all policies shall be so construed."

(21) "All farm property usually kept in barn buildings, including live stock, when burned or damaged by the burning of said buildings, shall be considered as contents thereof, when in the yards about said buildings."

None of the buildings, and none of the contents of the buildings, described in the policy, were destroyed by the fire, which occurred May 29, 1905. Some time in 1903 plaintiffs erected a building about 100 rods away from the group of barns and other buildings described in the policy and removed to and stored therein the larger farm machinery and tools. It was this building and the contents which the fire destroyed. It is not claimed that the burned building was insured. The question presented is whether the machinery and tools were covered by the policy. It is the contention of appellant that this is a question of law and is raised by the refusal of the trial court to direct, upon all of the evidence, a verdict for defendant. The trial judge was of opinion that the terms of the policy did not clearly indicate whether the destroyed tools were insured. He said to the jury, among other things:

"The plaintiffs claim that by the terms of this policy these tools were insured. The defendant insists that by the terms of this policy these tools were not insured. And that is the question we are going to leave to you to determine. It is true, as has been stated, that it is the duty of the court to construe a written instrument; but, where a written instrument is so drawn that the court is not able to tell just what it means, then evidence may be introduced upon that subject, and the paper, and you may find out just what the contract is."

In May, 1903, when the addition to the dwelling house

was insured and $500 was added to the insurance upon contents in the dwelling house, officers of defendant were at the home of plaintiffs discussing the matter of the additional insurance. Martha A. Wilson said, in substance, that she thought they were not carrying enough insurance on the contents of the barns because "at times, when we have our barns full, our crops all gathered, the crops alone would more than amount to what you are carrying on your buildings," to which her husband replied that, since he had his tools in the new shed, the amount carried was about right. To this there was, it is said, some expression of assent from one or both of the officers of defendant. It is argued for plaintiffs that from this the jury had the right to infer that the officers must have understood that the tools referred to, formerly kept in and about the barns, were insured while in the new shed—at least that plaintiffs so understood it—and if it were not so that the officers of the company should have spoken. It is claimed, further, that defendant is estopped to deny liability because:

(a) Down to the time of the trial the ground of nonliability asserted was that the tools were not kept in an insured building; that, having invited plaintiffs to make proofs of loss and to go before the board, it cannot now be claimed that the property was not covered by the terms of the policy.

(b) After the tools had been stored in the new shed, assessments were paid, which assessments were based in part upon the valuation of personal property stated in the policy.

(c) The defendant invited plaintiffs to arbitrate the matter and after they had been put to some expense in that behalf declined to submit the matter to arbitration.

It was agreed that the destroyed tools were worth $300. At the time of the fire, there were contents in the insured buildings. The company reserved the right to cancel any policy whenever, in the opinion of its board of directors, its interests required such cancellation. The insurance was to continue in force so long as the insured paid assessments, or until the policy was canceled.

OSTRANDER, J. (*after stating the facts*).  It will be observed that the personal property is not described otherwise than by its location.  The contents of a barn or of barns, on a farm, unlike the barn or barns, are not permanent, and the risk assumed by the insurer is not limited to the contents at the time the policy is issued.  It is the general rule that place and location are of the essence of a risk, especially when the property insured is not described otherwise than by location.  The policy in question differs slightly from the one considered in *Benton* v. *Insurance Co.*, 102 Mich. 281 (26 L. R. A. 237).  That policy described " one barn " and, in a separate item, " on contents in said barn."  It described " one toolhouse," and, separately, " on contents in toolhouse."  Plaintiff built a new barn, and in it he stored grain and tools.  This barn and its contents were destroyed by fire.  It was held that the contents of the barn were not within the protection furnished by the policy.  There is no intimation, however, in the opinion, and none in the numerous cases cited, sustaining the proposition that, if tools actually in the insured barn when the policy was issued had been for convenience placed in the insured toolhouse and had been there destroyed by fire, the owner could not have recovered for them as for contents of the toolhouse.  So, under the provisions of the policy in suit, there can be no doubt that the risk covered at the time of the fire the contents of any of the barns described in the policy wherever they may have been situated when the policy was issued, and however much they may have changed by use, replacement, and season.

But when it is attempted to extend the risk to the contents of one or of several other barns, not in existence when the policy was issued, the case is brought within the rule of *Benton* v. *Insurance Co.*, unless the defendant is estopped to demand the application of the rule.  If it is estopped, it is because it consented, in substance and effect, that the property destroyed should be, in the new and uninsured building, considered as contents of barn

buildings within the meaning of the policy. One conclusion to be legitimately drawn from the conversation with the officers of defendant company which has been referred to is that, in deciding not to increase the amount of insurance upon the contents of the barns, plaintiffs regarded the tools stored in the new shed as withdrawn from the protection of the policy and considered and understood the word "barns" to mean the barns mentioned in the policy, and the contents of such barns and of no others to be the "contents of barn buildings" referred to in the policy. But this is not the only conclusion which may be reasonably drawn. Plaintiffs regarded the risk of loss to be diminished by placing these larger farm implements in the detached and little-visited new building. In consequence they considered themselves fairly protected against loss of the contents of their barns without increasing the amount of the indemnity and the attendant cost. Assuming this to be what plaintiffs meant, and that the officers of defendant so understood, and in view of the fact that the company itself employed in the policy the term which is of importance here, and that the conversation in question was upon an occasion when the officers of defendant had called upon plaintiffs to determine the amount of insurance they should carry, there is reason for saying that both parties regarded the destroyed property as covered by the very general terms of the policy, and that assessments were thereafter paid and received with that understanding.

We reach the conclusion that the court was not in error in refusing to direct a verdict for defendant.

The judgment is affirmed.

BLAIR, C. J., and GRANT, MONTGOMERY, and HOOKER, JJ., concurred.