## SOUTHERN UNDERWRITERS v. WILLIAMS LUMBER CO.

### No. 1033.

Court of Civil Appeals of Texas. Waco.
April 16, 1931.

Rehearing Denied May 7, 1931.

R. G. Storey, of Dallas, for appellant.

E. A. Rice, of Cleburne, for appellee.

GALLAGHER, C. J.

This suit was instituted by appellee, Williams Lumber Company, a copartnership, against appellant, Southern Underwriters, an insurance exchange, to recover on a fire insurance policy issued by it, the sum of $5,-894.48, the alleged value of appellees' property destroyed by fire. Said policy purported to be perpetual and covered certain buildings, sheds, and stocks of merchandise constituting a retail lumber yard. It was dated December 28, 1916, and provided that, if an annual premium of $49 was not paid within thirty days after January 30th of each year, the same should be null and void. Appellant alleged that the annual premium due January .30, 1930, had not been paid, that the policy sued on, at the expiration of thirty days thereafter, became null and void, and that its liability thereon then terminated. Appellees pleaded in reply thereto that appellant had waived prompt payment of annual premiums, and that it had for a term of eight years immediately preceding treated the policy as in force and had accepted premiums thereon long after the same became due and as of the original due date thereof. Appellees further pleaded that after the fire, notwithstanding the annual premium due January 30, 1930, had not been paid, appellant promised to pay the loss sustained by them and assured them that the policy was still in force and protected them from further loss on that part of the property covered thereby which had not been destroyed by such fire. Appellees also tendered the sum of $49, being the amount of

the annual premium due January 30, 1930, and paid the same into court.

The case was tried by the court without a jury and judgment rendered in favor of appellees against appellant for the sum of $3,872.75, with legal interest thereon. Hence this appeal.

### Opinion.

Appellant by various assignments of error assails the action of the trial court in rendering judgment for appellees. Appellant contends by various propositions presented thereunder that appellees forfeited all rights under the policy sued on by their failure to pay the annual premium due January 30, 1930, within thirty days after that date. Appellant further contends therein that the findings of the trial court that it had waived prompt payment of annual premiums at the time specified in the policy and its right to forfeit such policy for failure to make such payments, that such policy was in full force and effect at the time of the fire, and that appellant, after the fire, with full knowledge of the facts, had waived any right to assert the forfeiture of such policy, are all without support in the evidence and contrary thereto.

The policy sued on provided that an annual premium should be paid thereon on the 30th day of January of each year or within thirty days thereafter, and that, if such premium was not paid within such time, such policy should be null and void. Appellee Williams testified that he was the managing partner, and that from the issuance of said policy in December, 1916, until the year 1922, he paid the premiums thereon promptly within the time specified. Appellees introduced in evidence formal receipts from appellant acknowledging the payment of such premiums for the years 1917 and 1918. Each of said receipts contained the following recital: "Our policy which you hold is perpetual. It does not expire until cancelled by you or by this exchange. Consequently you do not require a new policy." Said witness further testified that he did not pay the annual premium on said policy for the year 1922 within the stipulated time; that some time in April thereafter appellant's agent Crouch, who had taken his original application for said policy, called and reminded him that he had not paid such premium; that he explained to him that January 30th was taxpaying time, and that he was generally short of money at such time, and that that was the reason why he had not sent a check for the premium; that said agent then offered to receive such premium, and that he gave him a check therefor; that he asked him in that connection if he would have to have a new policy since the old one was out of date; that the agent told him that he did not have to have a new policy; that his policy was perpetual and ran until it was canceled by the exchange or by him, and that he could thereafter pay the premium at any time

during the year; that he asked the agent if he would call to collect the premium each year; that he replied that he had a large territory to cover, but he would probably be there some time during the year; that thereafter witness waited until said agent came and then gave him a check for the year's premium. Appellees introduced checks showing that they paid the annual premium on said policy for the year 1923 to said agent on October 26th of said year; for the year 1924 on October 20th of said year; for the year 1926 on July 18th of said year; and for the year 1929 on April 5th of said year. They also introduced a draft drawn by appellant on them on June 1, 1925, for the premium for that year. They also introduced a receipt from appellant dated October ——, 1927, for the premium for that year, and another receipt dated May 25, 1928, for the premium for that year. All except a small amount of the property covered by the policy sued on was destroyed by fire on March 16, 1930. The premium for that year had not been paid. Appellees notified appellant by wire at once, and appellant sent its adjuster to examine into the circumstances of the fire and the amount of the loss. Said adjuster required appellees to sign the usual non-waiver agreement. He then required a detailed statement of the loss, which appellees prepared and forwarded to him. Shortly thereafter the adjuster informed appellees that he could not do anything about the loss, and referred them to the exchange at its office in San Antonio. Appellee Williams then went to San Antonio, called at the office of the exchange, and had a conversation with Mr. Carter, an executive officer thereof. He testified that Carter told him in that connection that they could claim that the policy was forfeited because the annual premium for that year had not been paid, but that it would look a little funny to cancel the policy after a fire when they had been taking appellee's money year after year after the due date. He further testified that Carter said: "We are going to pay you, Williams, I don't know just what, but after I come back from New York I will put it up to the board and we will settle this business." He further testified that Carter told him in that connection that said policy was still in force on that part of the property insured which was not destroyed by the fire. He further testified that Carter was present in the courtroom, sitting by appellant's counsel at the time. Appellees also introduced an itemized statement of the property destroyed and the value thereof. Appellee Williams was the only witness who testified. There was no attempt made to contradict his testimony in any particular. The court filed comprehensive findings of fact, and included therein a specific finding that the acts of Crouch in authorizing appellees to delay the payment of premiums were fully ratified by appellant,

and that appellees relied thereon in deferring payment of premium for the year 1930.

Appellant in the propositions presented asserts that the testimony fails to show that Crouch had authority to agree that appellees might defer the payment of premiums without forfeiture of their rights under the policy, and that appellant acquiesced in such agreement and ratified the same. The initial authority of the agent Crouch in the premises is, we think, immaterial. Three times during the eight successive years that appellant received and accepted the payment of past-due premiums, such payment was not made until the latter part of October. Nearly nine months of the current year had then elapsed, and only a little over three months of liability on the policy remained. If appellees had understood that liability on said policy had been suspended for nine months, and that they had been without protection from loss or damage by fire for such period, as now contended by appellant, we can hardly conceive that they would have paid a full year's premium to have said policy reinstated for the short period of three months. Appellant must necessarily have known that appellees understood that said premium was for an entire year's protection. The record further shows that appellant, without, so far as shown, any suggestion on the part of Crouch, drew a draft on appellees for the annual premium for the year 1925 on June 1st of that year, and that appellees paid said draft. The record further shows that it issued its receipts from its home office for the annual premiums for the years 1927 and 1928 long after the expiration of the thirty days' grace allowed for the payment of such premiums. These facts were sufficient to sustain the court's finding that the exchange itself, as distinguished from its agent Crouch, waived the payment of premiums within the time limited by the terms of the policy, and justified appellees in believing that failure to make prompt payment of such premiums did not avoid the protection promised by their policy. Dunken v. Aetna Life Ins. Co. (Tex. Civ. App.) 221 S. W. 691; Globe Mutual Life Ins. Co. v. Wolff, 95 U. S. 326, 24 L. Ed. 387; McCorkle v. Texas Benevolent Ass'n, 71 Tex. 149, 8 S. W. 516.

Appellant assails the finding of the court that after the fire, and with full knowledge that the annual premium for the current year had not been paid, it recognized its liability for the loss and declared that said policy was still in full force and effect as to the property covered thereby which was not destroyed by the fire, on the ground that Carter's authority in the premises was not shown. Appellees' testimony on this issue was not controverted. It showed that Carter claimed to be an executive officer of the exchange, that he was in charge of its home office, and that he was cognizant of all the facts concerning the fire. This, with the further fact that he was present in court, apparently representing the exchange at the trial, fully justified the court's finding. We also think that his declarations to appellee Williams at that time were, when considered as a whole, outside of the terms of the non-waiver agreement. The testimony supports the finding that appellant, acting through said Carter, waived any right to defeat its liability for the loss sustained by appellees by reason of such fire on the ground that the policy at and prior to such fire had become null and void for failure to pay the current annual premium. Equitable Life Assurance Society v. Ellis, 105 Tex. 526, 147 S. W. 1152, 152 S. W. 625; Law v. Texas State Mutual Fire Ins. Co. (Tex. Com. App.) 12 S.W.(2d) 539; Id. (Tex. Com. App.) 16 S.W.(2d) 277.

Appellees have filed cross-assignments of error in which they assert that the recovery allowed by the court for loss on their stock of merchandise is less than justified and required by the evidence. The policy sued on covered four separate buildings, all of which were a total loss. The court allowed the full amount claimed for the loss of such buildings. Said buildings were designated as the lumber shed, office building, frame building, and cement building, respectively. The insurance on stock was distributed as follows: $5,000 on lumber, timber, laths, shingles, pickets, posts, sash, doors, blinds, etc., while contained in the lumber shed or in the yard immediately adjacent thereto; $275 on office furniture and fixtures, hardware, and paints, etc., while contained in the office building, and $400 on lime, cement, sash, doors, blinds, etc., while contained in the frame building. The cement building was empty at the time the policy was issued, and the same contained no provision for the insurance of merchandise while contained in such building. The testimony showed that appellees' entire stock of merchandise was stored in said four buildings at the time of the fire. The court found that the loss on the stock contained in the lumber shed at that time was $1,872.75, on the stock contained in the office building $916.38, on the stock contained in the frame building $962.78, and on the stock contained in the cement building $584.10, and that the total loss sustained by appellees on their stock of merchandise was $4,336.01. The court held as a matter of law that appellees could not recover for loss of merchandise contained in the office building in excess of $275, the amount specified in the policy, and that they could not recover for loss of merchandise contained in the frame building in excess of $400, the amount specified in the policy. He further found that appellees could not recover anything for the loss of merchandise contained in the cement building because the policy did

not provide for liability for such loss. The court restricted appellees' recovery to the sum of $1,872.75 for loss on merchandise contained in the lumber shed, $275 for loss on merchandise contained in the office building, and $400 for loss on merchandise contained in the frame building, amounting in the aggregate to $2,547.75. Appellees contend they should have recovered the full amount of their loss on their stock of merchandise.

■ Appellees failed to except to the judgment rendered by the court. The court in his conclusions of law recited that appellees' motion for judgment for the full amount of the loss sustained by them was overruled. No such motion is contained in the record. Neither is it shown that appellees excepted to the action of the court in refusing the same. Appellees are therefore not entitled to have such action reviewed. Duren v. Houston & T. C. Railway Co., 86 Tex. 287, 291, par. 3, 24 S.W. 258; Continental Ins. Co. v. Milliken, 64 Tex. 46, 49; Rossetti v. Benavides (Tex. Civ. App.) 195 S. W. 208, 211, par. 9; Garitty v. Halbert (Tex. Civ. App.) 235 S. W. 231, 235, par. 2; Levy v. Engle Bros. Co. (Tex. Civ. App.) 192 S. W. 548, 549, par. 3; Jones v. Baugh (Tex. Civ. App.) 277 S. W. 1091.

■ We have, however, examined appellees' contention on its merits. Appellees cite in support thereof article 4930 of the Revised Statutes, as amended by Acts 1927, c. 33, § 1 (Vernon's Ann. Civ. St. art. 4930). Said article provides, in substance, that no breach or violation by the insured of any warranty, condition, or provision of a fire insurance policy shall constitute a defense to a suit for loss thereon, unless the same contributed to the destruction of the property. They also cite and rely on Allemania Fire Insurance Co. v. Angier (Tex. Civ. App.) 214 S. W. 450, and Standard Fire Insurance Co. v. Buckingham (Tex. Civ. App.) 211 S. W. 531. These cases hold that, where, by the terms of a policy, the property described therein is insured at a particular location and not elsewhere, the removal thereof to another location, though a breach of such condition, does not avoid the policy unless it is shown affirmatively that the removal contributed to cause the loss. Such a situation was considered by the Commission of Appeals in Fireman's Insurance Co. v. Alonzo, 112 Tex. 283, 246 S. W. 82. The court there held that such removal violated a contractual provision of the policy, that the effect of such violation was to suspend the policy while the property remained at any other location except that stipulated, and that no recovery could be had for the destruction of the property while away from the stipulated location. Such holding is in accord with the general rule that, if property is insured "while contained in" a certain building, the location of the prop-

erty must be regarded as an element of the risk, and that no recovery can be had for loss if such property is destroyed elsewhere. 6 Cooley's Briefs on Insurance (2d Ed.) pp. 4921 et seq. These authorities are in harmony with the further rule that the location and situation of property as given in the policy constitute an essential element of description, and, where the same is not located as described, no recovery can be had for the loss thereof. First Nat. Bank v. Lancashire Ins. Co., 62 Tex. 461, 464; 2 Cooley's Briefs on Insurance (2d Ed.) p. 1197 et seq. We are of the opinion that the provisions of the policy sued on constituted a contractual distribution of the risk and a limitation of liability for the loss of the stock of merchandise contained in each of the respective buildings named therein. Appellant was therefore not liable beyond the amount stipulated for the merchandise contained in the office building and the frame building, nor for any amount for merchandise contained in the cement building. See, also, Parker-Russell Mining & Mfg. Co. v. Insurance Co. of North America, 209 Mo. App. 503, 240 S. W. 248, 251, pars. 3 to 5 inclusive, and authorities there cited; Benton v. Farmers' Mutual Fire Ins. Co., 102 Mich. 281, 60 N. W. 691, 26 L. R. A. 237. We are not unmindful of the fact that by the terms of the policy the stock of merchandise in the lumber shed and in the yard immediately adjacent thereto was insured for the sum of $5,000, and that only $1,872.75 was recovered for loss thereon. Appellee Williams testified that they did not keep any of their stock of lumber, etc., outside in the yard, but kept it all in the lumber shed; that the estimated value of the contents of said shed at the time the policy was written was about $6,500; that at the time of the fire their lumber, etc., was stored in the lumber shed, their lime, etc., in the frame building, and their office furniture and fixtures and paints, etc., in the office building; that they had never kept any of the stock outside; that all the buildings were separate and contained separate materials. Said witness further testified that a part of the lumber contained in the lumber shed was saved, and, in that immediate connection, that they had more than five or six thousand dollars worth of lumber in that shed at the time of the fire, but that the loss on the contents of such building was the sum of $1,872.75 only, as aforesaid. The distance from the lumber shed to the cement building was not shown. Appellees contend in this connection that the stock stored in the cement building was "in the yard immediately adjacent" to the lumber shed within the terms of the policy. We think, in view of the foregoing testimony, that the holding of the trial court to the contrary should be sustained.

The judgment of the trial court is affirmed.