REVERE FIRE INSURANCE COMPANY V. CHAMBERLIN ET AL.

1. **Practice**: PLEADING: COUNTER CLAIM. In an action in equity for the cancellation of a policy of insurance issued by the plaintiff, it was held that the defendant might by way of counter claim set up a cause of action on the policy for loss of the property insured, such cause of action being "connected with the subject of the action," within the meaning of section 2659 of the Code.

2. **Pleading**: SUFFICIENCY OF ALLEGATION. In a pleading claiming to recover on a policy of insurance, a statement of the amount of the policy and that such amount is due thereon is a sufficient averment of the amount of the loss, in the absence of objection thereto before trial.

*Appeal from Des Moines District Court.*

TUESDAY, JUNE 21.

ACTION to cancel a policy of insurance. The policy was issued to the defendant Chamberlin by the plaintiff's agent George A. Duncan, covering a stock of goods which was destroyed by fire. The plaintiff avers that the policy was wrongfully and fraudulently issued; that the loss had already occurred, as the defendant and Duncan well knew, and that the policy was not issued in pursuance of a previous agreement by parol.

The defendant concedes that the policy was issued after the loss, but denies that it was not issued in pursuance of a previous agreement by parol, and sets up such agreement. By way of counter claim he asks judgment for the amount of the policy. The court refused to cancel the policy, and rendered judgment for defendant for the amount of his proven loss. The plaintiff appeals.

*Hedge & Blythe*, for appellant.

*J. & S. K. Tracy*, for appellee.

ADAMS, CH. J.—That insurance may be effected by parol is well settled. See *The City of Davenport v. Peoria M. & F.*

*Insurance Company*, 17 Iowa, 276, and cases cited. That insurance may not be thus effected the appellant does not seriously contend, but it insists that according to the preponderance of the evidence no parol agreement for insurance was made.

It appears from the evidence that Chamberlin had been previously insured in the Commercial Insurance Company of St. Louis, which was represented by Duncan. This company became insolvent, and Duncan agreed with Chamberlin to take up the Commercial policy and give him a policy in some other company. Whether the plaintiff company was agreed upon as the company in which the new policy was to be issued, is the question in dispute. For the purpose of proving that that company was agreed upon, Chamberlin was examined as a witness in his own behalf. His testimony was in these words: " On Saturday, June 16, 1877, about ten A. M., I met George Duncan on Phillip's corner, who told me that the Commercial Insurance Company, in which I had a $4,700 policy, was busted, and wanted to write me in another company. I asked him what good companies he had, and he gave me the names of some half a dozen, among them the Revere, of Boston. I asked him how the Revere stood. He replied, 'first rate,' and I said that Boston looked after her public institutions more closely than most cities; to put my risk in that company, and to make a memorandum of it so that I might know it was insured from twelve noon that day, saying, 'that is the understanding isn't it?' He said, 'yes, you are insured for $4,700 in the Revere from noon to-day,' and took out his book and made a note of it." Afterward the book was introduced, showing the note or memorandum to be in these words: "June 16, 1877, put E. Chamberlin $4,700 from Commercial in Revere Ins. Co. 1 year at $\frac{3}{4}$ from to-day." This memorandum Chamberlin testified showed substantially the agreement. Duncan being examined in Chamberlin's behalf, testified to substantially the same facts. If these witnesses are to be believed, the agreement for insurance in the

plaintiff company was clearly proved. But the plaintiff insists that they are not to be believed.

As impairing the credibility of Chamberlin, very little, if anything, is shown. But it is shown that Duncan, after his interview with Chamberlin, directed his clerk to make an entry of the insurance as taken in the German American Insurance Company, of Freeport. Such entry was made, and no change thereof was made until after the fire. It is also shown that while the fire was in progress Duncan stated that Chamberlin's insurance was in the German American Insurance Company. This evidence tended to show that whatever may have been said to Chamberlin, Duncan determined to issue to him a policy in that company instead of the Revere, and that the entry was made in pursuance of that determination, and not by mistake, as he claims. The clerk testifies that when he was directed to change the entry so as to show the insurance in the Revere, Duncan said that he was afraid that Mr. Chamberlin would kick, that Chamberlin had agreed upon the Revere, and that he could not explain it to him as he could have done if it had not been for the fire. But however little weight we might be disposed to give to Duncan's testimony in view of his proven statements and conduct, we are not able to say that Chamberlin's testimony is overcome. There is no direct evidence whatever that what occurred between him and Duncan was not substantially as he testified. If that is so, then the contract of insurance was complete, and it was not within the power of Duncan to annul it by any change of mind upon his part, or any entries which he might make. We conclude, then, the agreement relied upon was valid, and that the policy issued in pursuance of it must be sustained.

The plaintiff insists that, even if this is so, the court erred in rendering judgment for damages on defendant's counter 1. PRACTICE: claim. He insists that such a counter claim does pleading: counter claim. not lie because the plaintiff's action is in equity, and the defendant's cause of action, if he has any, is at law,

and further, because the plaintiff does not claim a recovery of the defendant, and there can be no counter claim unless there is a claim.  The determination of the question presented must depend upon the construction which should be given to the statute under which the counter claim was pleaded.  Under section 2659 of the Code, sub. 2, a defendant may set up a counter claim when he has a cause of action "arising out of the contracts or transactions set forth in the petition, or connected with the subject of the action."

In the case at bar the transaction set forth in the petition was the wrongful and fraudulent issuance of the policy. Now, there may be some doubt whether the defendant can be said to have a cause of action arising out of the transaction set forth in the petition.  But it is sufficient if he had a cause of action connected with the subject of the action as set forth in the petition.  The subject of an action is to be distinguished from a cause of action.  The subject of an action is the thing or subject-matter to which the litigation pertains. In Bliss on Code Pleading, Sec. 126, the author defines it as "the matter or thing differing both from the wrong and the relief, in respect to which the controversy has arisen."  In the case at bar the subject of the action very clearly was the policy which had been issued, and just as clearly the defendant's cause of action was connected with it, being based upon the loss against which the policy purported to provide indemnity.

In Indiana the statute in regard to counter claims is scarcely as broad as ours, yet a counter claim was upheld in a case substantially like the case at bar.  *Woodruff v. Garner*, 27 Ind., 4.  That was an action in equity brought to cancel a deed as having been obtained by fraud.  The defendant denied the fraud, and asked by way of counter claim for judgment for possession.  It was held that the right to set up such counter claim could be sustained upon the ground that the deed constituted a link connecting the two causes of action.  In our opinion, then, the defendant in the case at

bar had a right to set up his claim upon the policy by way of counter claim.

But the plaintiff contends that the counter claim as pleaded is insufficient. The objection urged to it is that it does not 2. PLEADING: state the amount of the defendant's loss. The sufficiency of allegation. fact of the issuance of the policy is averred, the amount of the policy, and the destruction of the goods. Then follows an averment that the amount stated in the policy, with six per cent interest, is due to the defendant from the plaintiff. Upon these averments the parties went to trial. The evidence showed that the amount of the defendant's loss was adjusted and agreed upon. The judgment rendered is based upon that evidence. We do not think it can be reversed for insufficiency of the defendant's pleading.

AFFIRMED.

### SUPPLEMENTAL OPINION.

The plaintiff in a petition for a rehearing claims that the judgment in any event is too large. In our opinion we assumed that the judgment was based upon the adjustment agreed upon by the plaintiff's adjuster, in connection with the adjusters of other companies which had issued policies upon the same property. Upon a re-examination of the case we discover that the amount thus agreed upon is not equal to the amount of the several policies. But it is not necessary to conclude that the judgment was based upon such adjustment. There was competent, and we think sufficient, evidence, aside from such adjustment, that the defendant's loss was greater than the amount of the several policies. It is true it appears that the defendant agreed to the adjustment, but then it also appears that he did so only upon the understanding that all the policies, including the one in suit, were to be settled. As the plaintiff afterward refused to settle, we think that the defendant was not bound by his agreement.

Other points are made in the petition for a rehearing which we have carefully examined, and we have to say that we think that the petition must be overruled.