PATRICK STEPHENS, Appellee, v. CAPITAL INSURANCE COMPANY, Appellant.

Fire Insurance: WHEN CONTRACT COMPLETED: VARIANCE BETWEEN POLICY AND APPLICATION. The defendant's soliciting agent took the plaintiff's application for a policy of insurance, and forwarded it to the defendant, together with the plaintiff's notes for the premium. The application expressly stated that it was subject to the approval of the company. The company did not approve it, but changed it by material interlineations, and then made a policy according to the

changed application, and sent it to the agent, but it was not delivered to nor accepted by the plaintiff. A few days afterwards a part of the property was destroyed by fire, and the agent returned the policy to the company before the plaintiff called for it, and the company returned to the plaintiff his notes by mail. *Held*, that, the plaintiff having never assented to the policy as issued, there was no contract of insurance, and that the company was not liable.

*Appeal from Union District Court.*—HON. H. M. TOWNER, Judge.

## WEDNESDAY, JANUARY 25, 1893.

THIS is an action in equity, by which the plaintiff demands that the defendant be decreed to issue and deliver to the plaintiff a fire insurance policy in pursuance of an alleged agreement for insurance upon certain buildings and property. It is averred in the petition that after the right to a policy had accrued to the plaintiff the property was destroyed by fire, and judgment is demanded for the amount of the loss. There was a judgment and decree for the plaintiff and the defendant appeals.—*Reversed.*

*Read & Read*, for appellant.

*McDill & Sullivans*, for appellee.

ROTHROCK, J.—The defendant is a fire insurance company. Its principal place of business is in the city of Des Moines. One Stalcup was its local agent at Afton, Union county. The plaintiff is the owner of a farm of sixty acres, upon which he resides. On the first day of March, 1890, Stalcup filled up an application for insurance to the defendant company for the plaintiff upon the plaintiff's buildings and personal property. Stalcup was a soliciting agent, having power to receive applications and forward them to the company, but did not have power to issue policies, or to bind the company by contracting with the assured.

The application was forwarded by Stalcup to Des Moines and was received by the defendant on the tenth day of March, 1890. A policy was issued and sent to Stalcup on the thirteenth day of said month. Part of the insured property was destroyed by fire on the sixteenth of said month. The plaintiff did not call upon said Stalcup for the policy until after the fire, and Stalcup did not deliver the policy to him. The evidence tends to show that the policy was returned to the company before the plaintiff called on Stalcup for it. If this were all there is of the case,—that is, if the policy was issued upon the application as made by the plaintiff,—it may be that the contract was complete, and that the policy was in the hands of Stalcup for the plaintiff. But we do not determine that question.

The defendant claims that the application was not accepted by it as it was written, but that it was materially altered by the defendant, so as to conform to the usual rules of the defendant in making contracts of insurance; and that it was not a completed contract, because the plaintiff had not accepted the policy which was sent to Stalcup and which was not in accord with the application. The application as written and sent to the defendant appeared to request insurance "against loss or damage to the amount of one thousand, five hundred and forty dollars, fire and lightning, and seven hundred and fifty dollars on cyclone and wind storms." The situation and amount of property to be insured was expressed in the application, as follows: "On horses, mules, colts on premises, and against lightning on or off premises, not to exceed $150 on each $200; on cattle on premises, against lightning on or off premises, not to exceed $50 on each $150; on board barn, frame, tornado, $100; on wagons, carriages, buggies, harness in farm buildings on premises, $40; on grain, $50; on hay, $50; on one-story frame dwelling house, $650; on household furniture, beds and bedding,

wearing apparel, provisions, sewing machine, printed books, pictures, picture frames, piano or organ, $300." The aggregate of the amount for which insurance is asked in the application is one thousand, five hundred and forty dollars. That amount was intended to cover the whole property, and seven hundred and fifty dollars in value of the property was to be also insured against loss by tornado, cyclone, and wind storm. When the application was received at Des Moines, it also contained a statement that the land upon which the insured buildings were situated was mortgaged to secure the payment of one hundred and eighty dollars; and there was a clause in the application in these words: "Loss, if any, payable to ——, mortgagee, as —— interest may appear." When the application came into the hands of the officer of the defendant whose duty it was to pass upon it, and decide whether it would be approved, and the risk accepted, he inserted the word "the" in the first blank, and the word "his" in the second. It was claimed that this was no real change in the meaning of that clause of the application. It may be that this claim should be sustained; but it may be doubted whether it was intended that the mortgagee should participate in the indemnity without the filling of the blanks. But that question we need not determine. The officer of the defendant further changed the application by interlineation, so that the tornado clause applied to a part of the property only. The application, construed as it was written, would have been an insurance on any part of the property against loss by tornado to the extent of seven hundred and fifty dollars. It was not accepted by the defendant in this form. And the defendant had the undoubted right to either accept or reject the application. It is expressly stated in the application that it is subject "to the approval of said company." It is an elementary principle that there can be no valid contract between

the parties without a meeting of the minds of the contracting parties. The application as received by the defendant was not approved. It was changed in a material respect, and a policy was sent to Stalcup to be delivered to the plaintiff. It was his undoubted right to refuse to receive the policy because it was not in accord with his application.

The plaintiff executed promissory notes for the insurance premium, which were sent to the defendant, and after the fire the notes were returned to him by mail, and Stalcup returned the policy to the defendant. Some question is made in argument whether the defendant should be held liable as on a contract, on the ground that the premium notes were not promptly returned. There is no merit in the claim. The notes were returned in a reasonable time.

It is unnecessary to prolong this discussion or to consider other questions discussed by counsel. We are clearly of opinion that there is no completed contract between the parties. There is nothing mysterious about a contract of insurance. It requires the assent of both parties to the same thing as any other contract, and the parties thereto have the same right to prescribe their own terms of acceptance of propositions and offers as are accorded to parties in any other contract. Suppose the plaintiff's property had not been destroyed by fire, and he had refused to accept the policy because it was not in accord with the application, and the matter had remained in that way until the premium notes became due, what sort of a position would the defendant be in if it should bring an action on the notes? The answer to this query will occur even to the "common mind." The conclusion we reach is supported in principle by the following cases: *Wood v. Poughkeepsie Insurance Co.*, 32 N. Y. 619; *Mutual Life Insurance Co. v. Young*, 23 Wall. 85; *Hamblet v. City Insurance Co.*, 36 Fed. Rep. 118. See also Wood on Insurance, p. 18.

The decree of the district court is REVERSED.