HENRY CORNELIUS, Executor of the Estate of Frederick Wm. Cornelius, Appellant, v. FARMERS INSURANCE COMPANY.

**Representations of Insurance Agent:**   WHEN THERE IS NO ESTOPPEL TO DENY.   Where an insurance soliciting agent represented to insured, who could not read English, that for an additional con-

sideration, which was paid, he could fix the policy so that a change in the use of the property from that mentioned would not forfeit the insurance, the company will not be estopped from pleading a provision contained in the policy, contrary to the agent's representations, since the agent acted outside of the scope of his employment, and estoppel only applies to representations of present and past facts, and not to future contingencies, except where the abandonment of an existing right is intended.

*Appeal from Clayton District Court.*—HON. A. N. HOBSON, Judge.

MONDAY, JANUARY 28, 1901.

ACTION on an insurance policy. Defense, that the property was used for other purposes than stipulated, thereby forfeiting the contract. It appears that plaintiff's decedent signed the application for insurance February 5, 1894; that shortly afterwards a policy of that date, for the term of five years, was issued and accepted; and that the building covered was destroyed by fire August 3, 1896. It was insured as a dwelling house, but when burned was occupied as a storehouse for machinery. The plaintiff pleaded that defendant was estopped from claiming forfeiture because of this change. Upon the introduction of plaintiff's evidence the court directed a verdict for defendant. From judgment thereon, the plaintiff appeals.—*Affirmed.*

*D. D. Murphy* for appellant.

*Deacon & Good* for appellee.

LADD, J.—One of the conditions of the policy was that it should become void if the premises were used for any purpose other than mentioned therein; and another, that liability should cease during vacancy of the building. Unless, then, the defendant is estopped from claiming a forfeiture of the policy because of the use of the building as a storehouse, rather than a dwelling, as insured, there can be no re-

covery.  The application was procured by a soliciting agent, and the policy thereon issued directly from the home office. Among others, it contained these questions.  "For what occupied?  By whom?"—which were answered, "Pri. Frm. Dwg., by me or tenant."  The evidence tended to show that the deceased said to the agent that, while the building was then occupied by a tenant, he was not certain how long it would be, and he did not want the insurance unless it would be good whether he had a tenant in the house or not; that the agent responded that it would not hold good as written, but for an additional $2.50 he could make it so the building could be used for a storehouse or granary when not occupied as a dwelling, though not when vacant; that the deceased accepted the proposition, and paid the extra premium; that thereupon the agent did some scratching and writing upon the application, and declared that it was as desired, whereupon the deceased, who could not read English, signed it. It thus appears that the application contained no misstatement of any existing fact or past transaction, nor did it omit any.  What was said related solely to an anticipated, though not settled, use of the property.  It was an arrangement as to conditions of the policy, with which a soliciting agent had nothing to do, rather than a representation of the existing or past conditions of the property to be insured.  That such an agent has no authority to make a binding contract for insurance, or what shall be the provisions of a policy, is too well settled to require any citations.  The scope of his authority is limited to taking applications, and as, within this, it is his duty to see that the condition of the property is truly and fully disclosed when he undertakes to prepare them for the assured, the company may not take advantage of omissions or misstatements of facts or conditions affecting the risk. *Fitchner v. Association*, 103 Iowa, 280.  But whatever he may say as to the effect of the policy or what it shall cover, or of ts conditions, is mere opinion on his part, pertaining to matters wholly without the scope of his employment.  Talks

and agreements in reference to matters of future performance are merged in, and presumed to be expressed in, the policy, which, as in the case of other written contracts, becomes effective as the consummation of their wishes and intentions by its delivery on the part of the company and acceptance by the assured. *Moore v. Insurance Co.,* 72 Iowa, 416; *Baldwin v. State Ins. Co.,* 60 Iowa, 497 *Stephens v. Insurance Co.,* 87 Iowa, 283, Ostrander Insurance 186. Nor can anything he may impart concerning a future contingency operate as an estoppel against the insurer. This is—first, because he is given no such authority; and, secondly, for the reason that the doctrine of estoppel is never applied save where the representation relates to a present or past fact, or state of facts, unless it has reference to an intended abandonment of an existing right, upon which another has relied. *Shields v. Smith,* 37 Ark. 52; 11 Am. & Eng. Enc. Law (2d ed.) 424; *Insurance Co. v. Mowry,* 96 U. S. 547 (24 L. Ed. 676). In the last case, Justice Field, in passing on a similar question, said: "The doctrine of estoppel is applied with respect to representations of a party, to prevent their operating as a fraud upon one who has been led to rely upon them. They would have that effect if a party who, by his statements as to matters of fact, or as to his intended abandonment of existing rights, had designedly induced another to change his conduct or alter his condition in reliance upon them, could be permitted to deny the truth of his statements, or enforce his rights against his declared intention of abandonment. But the doctrine has no place for application when the statement relates to rights depending upon contracts yet to be made, to which the person complaining is to be a party. He has it in his power in such cases to guard in advance against any consequences of a subsequent change of intention and conduct by the person with whom he is dealing. For compliance with arrangements respecting future transactions parties must provide by stipulations in their agreements, when reduced to writing. The

doctrine, carried to the extent for which the assured contends in this case, would subvert the salutary rule that the written contract must prevail over previous verbal arrangements, and open the doors to all the evils which that rule was intended to prevent." As precisely in point, see *Insurance Co. v. Davenport,* 37 Mich. 612. There the policy stipulated that in the event the building became vacant 15 days without notice to the company, and its consent indorsed thereon, it should become void. The evidence showed that the agent was informed by the applicant that he anticipated the house would be vacant during a year or more, and was told it would make no difference. It was held that the company was not estopped from setting up the forfeiture of the policy by reason of its vacancy at the time of the loss; the court, through Campbell, J., saying: "But in this case the vacancy concerning whch the parties conversed, if there was any such conversation, was one contemplated in the future; and the stipulation or understanding, if it amounted to any, was an executory contract, intended to form a part of the contract of insurance. * * * The policy was the conclusion of the bargain, and its acceptance would exclude any parol promises inconsistent with it." The same principle was distinctly recognized in *Fitchner v. Association,* 103 Iowa, 280. In *Dryer v. Insurance Co.,* 94 Iowa, 471, the insured made the proposition that the policy covered his property, wherever located within the county, but the agent neglected to include this in the application. It was a proposal only, based on a future contingency of the assured moving to another locality. The policy in that case, as in this, was valid when issued, and was only rendered invalid by a subsequent change. True, it was there suggested, but not decided, that the company might be estopped.* In *Fitchner v. Insurance Co., supra,* and those cases upon which it was

---

*NOTE.—The petition for rehearing in *Dryer v. Ins. Co.,* 82 N. W. 494, was withdrawn after rereharing had been ordered in this case and that opinion is therefore withheld from publication.

grounded, the msrepresentations, whether omissions or false statements, were such as inevitably resulted in the invalidity of the policies *eo instante* upon their execution. Here the agent merely promised to fix the application so that the policy would cover the property if perchance the change in its use should occur. No mention was made of the information imparted, and what was said amounted to nothing less than a pledge of insurance on behalf of the company in event of a future contingency. This was not within the scope of a soliciting agent's authority. The assured accepted the policy as written, and cannot now complain. *Copeland v. Insurance Co.*, 77 Mich. 554 (43 N. W. Rep. 991), is not in point, as there the agent was authorized to issue policies. The ruling was right, and is AFFIRMED.