W. B. MURPHY, Appellant, v. CONTINENTAL INSURANCE COMPANY, Appellee.

**INSURANCE:** Fire Insurance—Soliciting Agent—Authority. Mere
1 soliciting agents have no authority to determine the legal effect of a policy of insurance. Such authority will not be presumed. It must be proven. So held where such an agent undertook to tell the assured that his policy, in connection with certain language in an application, would cover all the hay raised by the insured.

**INSURANCE:** Fire Insurance—"Hay in Stack." Insurance on
2 "hay in stack" does not cover hay in a mow of a barn.

**INSURANCE:** Fire Insurance—"Farming Utensils." "Farming
3 utensils," as employed in a policy of insurance issued to one engaged in general farming, includes any instrumentality within the meaning of the word "utensil," made use of on a farm. So held as to a windmill and stock scales *stored on a farm* awaiting erection.

**INSURANCE:** Fire Insurance—"Tools." Neither a windmill nor
4 stock scales stored in a building on a farm is a "farm tool," within the meaning of such latter terms, as used in a policy of insurance.

*Appeal from Iowa District Court.*—R. P. HOWELL, Judge.

WEDNESDAY, MAY 10, 1916.

REHEARING DENIED FRIDAY, NOVEMBER 17, 1916.

ACTION for indemnity on an insurance policy resulted in a directed verdict for defendant and judgment thereon. The plaintiff appeals.—*Reversed.*

*W. E. Wallace* and *J. M. Dower,* for appellant.

*Stapleton & Stapleton,* for appellee.

LADD, J.—The defendant issued its policy of insurance to plaintiff on February 19, 1912, agreeing to indemnify him against loss or damages by fire, "$700 on farming utensils, cream separator, mowers, harvesters, reapers, corn binders, farm and garden tools (other than threshers, clover hullers, and engines) on the premises of the assured, . . . $500 on hay in stacks on cultivated premises on farm herein described . . . situated (except as otherwise above provided) and confined to premises described in application, occupied by assured, . . . 440 acres, Sections 28, 29, 33, Township 81, Range 11, county of Iowa, state of Iowa."

The plaintiff had purchased a new windmill, several years previous, and stored it in his corn crib until he could put it up. Stock scales had been taken down and stored in an old granary. Both buildings with their contents were destroyed, August 20, 1913. A few days previous, hay estimated at 30 tons, in a barn situated on what is designated the "Hall farm," was burned. This Hall farm was operated under oral lease by the assured when the policy issued, and until bought by him, June 7, 1913.

I. The policy, among other things, insured the barn and "$100 on hay therein." This was the fifth item, and the twelfth item read: "$500 on hay in stacks on cultivated premises on farm herein described." In the application, instead of "on cultivated premises," as in the policy, the words "or cultivated premises" followed "farm," and plaintiff testified that, after preparing the application, it was found that the insurance was not rightly distributed on hay, and that the agent added the words as stated, and explained that, by so changing the application, the policy would cover all hay the insured raised, and it was alleged in an amendment to the petition that they agreed:

1. INSURANCE: fire insurance: soliciting agent: authority.

"That said policy was to cover and insure all hay that plaintiff might raise or produce on said sections and that said written insertion was made with mutual intention and understanding to cover their agreement as aforesaid to cover all such hay."

But the insured must be assumed to have known that the application was not the contract, and that the policy for which he was applying would state the terms of their agreement. The insured does not contend that any fact was misrepresented or that any fraud was practiced on him by the agent. His contention is that, the agent having advised what the policy would insure, the company is estopped from asserting otherwise. To construe or interpret the policy issued or to be issued is no part of the agent's duty. In *Dryer v. Security Fire Ins. Co.*, 94 Iowa 471, the insured testified that the agent told him that he could move his property to any place in the county by giving notice to the company, and, in denying liability for loss of property elsewhere than covered by the policy, the court, speaking through Robinson, J., said the agent "appears to have been only a soliciting agent, and, if that was his true character, it was no part of his duty, and not within the scope of his powers, to contract for his principal, to construe its policies, or to determine their legal effect. As he was a special agent, not clothed with any apparent right to do more than to solicit insurance, and to perform such acts as were incident to that power, the plaintiff was charged with knowledge of the limitations of his agency, and was not authorized to give any contractual effect to the statements he made. His principal was bound by the knowledge he had when the application was prepared and accepted, but not by statements he made outside the scope of his apparent powers."

In *Cornelius v. Farmers' Ins. Co.*, 113 Iowa 183, 184, the agent had represented that for an additional premium he would make the application so that the property would be insured when vacant, and we there said:

"It thus appears that the application contained no misstatement of any existing fact or past transaction, nor did it omit any. What was said related solely to an anticipated, though not settled, use of the property. It was an arrangement as to conditions of the policy, with which a soliciting agent had nothing to do, rather than a representation of the existing or past conditions of the property to be insured. That such an agent has no authority to make a binding contract for insurance, or what shall be the provisions of a policy, is too well settled to require any citations. The scope of his authority is limited to taking applications, and as, within this, it is his duty to see that the condition of the property is truly and fully disclosed when he undertakes to prepare them for the assured, the company may not take advantage of omissions or misstatements of facts or conditions affecting the risk. *Fitchner v. Association,* 103 Iowa 280. But whatever he may say as to the effect of the policy or what it shall cover, or of its conditions, is mere opinion on his part, pertaining to matters wholly without the scope of his employment. Talks and agreements in reference to matters of future performance are merged in, and presumed to be expressed in, the policy, which, as in the case of other written contracts, becomes effective as the consummation of their wishes and intentions by its delivery on the part of the company and acceptance by the assured. *Moore v. Insurance Co.,* 72 Iowa 416; *Baldwin v. State Ins. Co.,* 60 Iowa 497; *Stephens v. Insurance Co.,* 87 Iowa 283; Ostrander, Insurance, 186. Nor can anything he may impart concerning a future contingency operate as an estoppel against the insurer. This is: First, because he is given no such authority; and, secondly, for the reason that the doctrine of estoppel is never applied save where the representation relates to a present or past fact, or state of facts, unless it has reference to an intended abandonment of an existing right, upon which another has relied."

Here there was no misrepresentation of or omission to

state any fact of which the company would be assumed to know from the knowledge of its agent. See *Funk v. Anchor Fire Ins. Co.,* 171 Iowa 331. What the agent undertook was to tell the assured what the policy would cover, and this was clearly beyond the scope of his agency. In so far as appears from the record, the only evidence bearing thereon was that he solicited the insurance and prepared the application, which was signed by the assured. This was the work of a soliciting agent, and, in the absence of evidence that he possessed powers in excess of those exercised therein, it ought not to be assumed that he was something more. In other words, we cannot assume, without proof, that the agent was endowed with authority to say what the policy in response to the application would be, or its meaning. It was retained by the assured without objection and without claim, but that he was aware of its contents. Unless it covered the hay put in the barn, then there can be no recovery for

2. Insurance: fire insurance: "hay in stack."

loss of the hay. The insurance was on "hay in stack" only. A stack of hay, grain, straw or the like, is a large quantity thereof collected and usually built up in layers in conical, oblong or rectangular form, to a point or ridge at the top, so that it will be preserved against the inclemencies of weather. See *People v. Doyle* (Cal.) 110 Pac. 458; *Farmers' Mut. v. Reser* (Ind.), 88 N. E. 349. Of course, it may be stacked under cover, or cover may be placed over it. In *Farmers' Mut. v. Reser,* supra, it was stacked in a shed. In *Regina v. Munson,* 2 Cox C. C. 186, haulm was stacked under cover in a building which had been used as a stable. The accused insisted that there was a variance between the charge of having set fire to a stack of haulm and the proof, but Coleridge, J., said:

"I do not think it essentially necessary to a stack that it should be erected out of doors. It is enough if the material be collected direct in the field and 'stacked' in a building."

In *Benton v. Farmers' Mut. F. Ins. Co.* (Mich.), 26 L. R. A. 237, the court decided that:

"The term 'stack' has a well-defined meaning, and cannot be said to include grain in a mow in a barn."

Nor do we think that "hay in stack" is susceptible to being construed as hay in the mow of a barn. Such is not the ordinary meaning of the expression. No one would think of hay stowed away in a barn as being a stack. The court rightly denied recovery for the hay burned.

II. Was the windmill or scale a farm tool or farming utensil? "Tool" is defined in Webster's Dictionary as:

"An instrument of manual operation, as a hammer, saw, plane, file or the like, used to facilitate mechanical operation, as distinguished from an appliance moved by machinery; the instrument of a handicraftsman or laborer at his work; an implement; as, the tools of a joiner, smith, shoemaker," etc.

3. INSURANCE: fire insurance: "farming utensils."

A similar definition is to be found in the Century Dictionary. Evidently, by the words "garden tools" are meant instruments or devices movable in character and operated by hand, or possibly by other motive power in the performance of work or in doing work in the garden or on the farm. The word "utensils" is much broader in meaning, though it may be applicable to many implements designated "tools," in common parlance. The Century Dictionary defines "utensil" as:

"An instrument or implement, as, utensils of war; now, more especially, an instrument or vessel in common use in the kitchen, dairy or the like, as distinguished from agricultural implements and mechanical tools."

Webster's Dictionary says it is:

"An instrument or vessel, especially one used in the kitchen or in a dairy."

The Supreme Court of North Carolina, in *Elliott v. Posten*, 57 N. C. 433, said that the word "utensil" will embrace

everything for household purposes or applicable to the trade to which the term has reference.

In *Laporte v. Libby,* 114 La. 570, the court expressed the same view:

"The word 'utensils' more especially means an implement or vessel for domestic or farming use. See Standard Dictionary, verbo. As used in Civil Code, Article 3259, 'utensils' is a translation of 'ustensiles,' used in Article 2102 of the Code Napoleon. This word, in France, has been held to include a threshing machine. Fuzier Herman, Code Civil, Vol. 4, p. 873. In French jurisprudence the word is used as synonymous with 'agricultural instruments,' whatever may be their nature. Baudry Lacantinerie, Droit Civil, Des Privileges, Vol. 1, p. 445, No. 472. Laurent says that the word 'ustensiles' has a very extended meaning. It has been held in other states of the Union that 'mowers' and 'combined harvesters' used by debtors for necessary farm work are within the meaning of the term 'farming utensils or implements,' as used in exemption laws. . . . We are of the opinion that a steam thresher is clearly within the term 'farming utensils,' as used in Civil Code, Article 3259."

A combined harvester was held to be a utensil in *In re Estate of Klemp,* 119 Cal. 41, and a thresher was so found to be in *Spence v. Smith,* 121 Cal. 536. In *Lahn v. Carr,* 120 La. 797, it is said that a steam engine used in connection with a pump for irrigation, with a thresher, and with machinery for cultivating a crop of rice, and not shown to have been used for any other purpose than the cultivation and harvesting of such crop, is a "farming utensil" within Civil Code, Art. 3259, on which the privilege of the vendor is superior to that of the lessor of the land, and this whether the engine was bought as part of the pump, or of the thresher, or at any other time and from any other source.

In *Phœnix Ins. Co. v. Stewart,* 53 Ill. App. 273, the court adjudged a hay press a farming utensil. In *Royston v. McCulley* (Tenn.), 52 L. R. A. 899, blacksmith tools used

in operating a farm were held to pass under a bill of sale as utensils. This court found "binding twine" to be included in "stock of implements," in *Davis v. Anchor Mut. Fire Ins. Co.,* 96 Iowa 70. See *Reynolds v. Iowa & Neb. Ins. Co.,* 80 Iowa 563. No case precisely in point has been cited, nor have

4. Insurance: fire insurance: "tools."

we been able to discover any. Of course, neither the windmill nor the scale can be said to come within the definition of farm tool.

But farming utensil, as pointed out, is of much broader significance than "farm tools." The policy does not limit the expression to any particular phase of farming. The word is used in the generic sense. See *Bank of Dearborn v. Matney,* 132 Fed. 75. And by "farming utensils" were intended any instrumentalities within the meaning of the word "utensils," made use of on a farm. The assured was engaged in general farming, including the keeping and raising of stock. Teams and stock must have water, and the modern farmer requires scales by which to test the values of feed, the growth of his stock, and to protect himself in the matter of weight when disposing of grain or stock on the market. Both are in common use and are appropriate to successful operation of the farm, and, as we think, are fairly within the meaning of "farming utensils," at least when not permanently attached to the realty. That they may be so annexed to the soil as to become part of the realty is well settled. See *Thomson v. Smith,* 111 Iowa 718; *State Security Bank v. Hoskins,* 130 Iowa 339; *Phelps & Bigelow Windmill Co. v. Baker* (Kans.), 30 Pac. 472. But either may be so attached as to be removable as a trade fixture. Neither was attached at all, and it would not seem that, even though designed for permanent annexation to the soil, this alone would preclude their classification as farming utensils. Surely, an implement establishment carrying a full line of farm implements would not exclude windmills from their stocks. That its motive power is wind is not controlling, for many utensils are operated by steam. Moreover, were the pumping done by an engine, as

is common, there would be no hesitancy in declaring it a utensil, which, in its derivation, means an implement for use. These were implements for pumping and weighing, and, though not in actual use, were utensils, within the language of the policy. If not, what were they? They were not appurtenances to the land, and that they might become such did not obviate the application of nomenclature which seems correct, appropriate and fairly within the terms of the contract. —*Reversed.*

EVANS, C. J., GAYNOR and SALINGER, JJ., concur.