TILLIE CHAMBERS, Administratrix, Appellee, v. HOME MUTUAL INSURANCE ASSOCIATION, Appellant.

No. 41201.

1354

April 5, 1932.

Rehearing Denied September 30, 1932.

Coyle & Coyle and Hallagan, Fountain & Stewart, for appellee.

Putnam, Putnam & Forrest, for appellant.

KINDIG, J.—Henry M. Olson, an automobile dealer, in Bode, owned a Chevrolet demonstrating car which became involved in an automobile accident in May, 1930, and thereby caused the death of Mildred Chambers. Tillie Chambers, the plaintiff-appellee, was duly appointed administratrix of the Mildred Chambers estate. As such administratrix, the appellee brought suit against the said Henry M. Olson for the wrongful death of Mildred Chambers, and accordingly, on October 27, 1930, recovered a judgment against him for $5,000. Execution was issued on the judgment and delivered to the sheriff, but that officer was unable to find any property belonging to Henry M. Olson on which to levy the writ. Consequently the writ of execution was returned unsatisfied.

Thereafter, the appellee commenced this action against the defendant-appellant on the theory that Henry M. Olson at the time of the aforesaid accident held a liability insurance contract with the appellant company whose headquarters are at Des Moines. In appellee's original petition, it is alleged that Henry M. Olson held a liability insurance policy covering the above-named accident. While in an amendment to the petition, it appears that the appellee seeks to recover, not on a written policy of insurance, but rather on an oral agreement alleged to have been made at the time the application for the previously named policy was given. This oral agreement, it is said, provided that the policy of insurance named in the original petition should be transferred from one demonstrator car of the above-named Henry M. Olson's to any subsequent car of that kind purchased by him.

It appears that Olson owned a Chevrolet car, which he sold February 6, 1930. Before selling that car, Olson, on August 1, 1929, procured the written liability insurance policy named in appellee's original petition, for the purpose of protecting him against damages resulting from the operation of the car. So, on February 6, above named, when Olson sold the Chevrolet car, it was fully covered by the written policy of insurance executed by the appellant company. Following the sale of that

car thus covered by the liability insurance policy, Olson purchased a new Chevrolet automobile, and the accident above described was caused by the new car. But the new automobile was not named in or covered by the written liability insurance policy issued by the appellant. Nevertheless, appellee seeks to recover on the theory of her petition and amendment thereto, as above specified. For answer to the amended petition, the appellant denied the existence of an insurance policy covering the car involved in the accident. Likewise, appellant denied that the car in question was covered by an oral contract of insurance. Furthermore, the appellant in its answer alleged that its local agent at Bode, which solicited the insurance from Olson, had no authority to make any kind of an insurance contract. Such agent had no authority, appellant alleged, except to solicit insurance.

By way of reply to appellant's answer, the appellee pleaded estoppel on the theory that the local agent had been permitted by appellant to exercise power and authority other than that of a mere soliciting agent. A motion was properly and timely made by the appellant for a directed verdict, but overruled by the district court, and the cause was submitted by that tribunal to a jury, which, on March 26, 1931, returned a verdict against the appellant. Judgment was entered accordingly.

■ I. Obviously appellant's motion for a directed verdict should have been sustained so far as any right to recover on the written policy of insurance is concerned.

That policy, as before explained, covered a Chevrolet car not involved in the accident. It is true that the car in the aforesaid accident was owned by Henry M. Olson, but as previously suggested, the policy did not cover this car. As before stated, the car protected by the policy of insurance was sold by Henry M. Olson several weeks before the accident. The car which actually caused the accident resulting in the death of Mildred Chambers was not covered by the insurance policy either originally or by a written transfer contract. About this there is no dispute. Hence, there is no jury question involved here.

■ II. But it is pleaded by appellee in her petition and contended by her in argument here that under an oral agreement the appellant, acting through its agent at Bode, arranged that the aforesaid policy should automatically be transferred from the old car when sold to the new when purchased.

Said oral contract, appellee contends, was entered into at the time an application was made for the written policy above mentioned. The appellant, in accordance with the foregoing preliminary application, as a matter of fact did execute and deliver the original policy under consideration. Such contention on appellee's part that an oral contract was thus entered into is hardly sustained by the evidence. Appellant's agent flatly denies that he made such oral agreement. Henry M. Olson testified that the agent stated, at the time the original written policy was contracted, that such insurance agreement could be transferred from the old to the contemplated new car if and when purchased. Corroborating the declaration that the transfer could, under certain conditions, as distinguished from would, be made, are the actions of Olson after the accident. To illustrate, Olson delivered the policy to the agent in order that it might be sent to the appellant company at Des Moines for the purpose of transfer. Also Olson procured the numbers for the new car for the purpose of perfecting a transfer of the policy from the old automobile to the new, but, through his apparent dilatoriness, he never in fact delivered these numbers to the agent. Again, from time to time, Olson complained to the agent because the policy had not been transferred, apparently forgetting that he had not furnished the necessary numbers of the new car. At least both Olson and the agent contemplated that the numbers of the new car were to be supplied before the application for transfer could be forwarded to the appellant. Thus, whether Olson was to furnish the numbers on the new car or the agent undertook to procure them himself, the fact that the numbers were to be procured or obtained for the purpose of being forwarded to the appellant preliminary to a transfer, in itself contradicts any thought of an automatic transfer. Originally Olson contemplated, and endeavored to perfect, an assignment of the policy to the purchaser of the old car contrary to any thought of transferring the same to another car owned by himself. The purchaser refused to accept Olson's insurance policy. All the conduct of the parties indicates that the transfer in fact had never been made. Yet Olson does make a statement in the nature of a conclusion that his oral agreement with the agent contemplated an automatic transfer of the policy from one car to the other. Such oral contract is denied by the appellant and its

agent emphatically states that the alleged agreement was never entered into.

Assuming, without deciding, that this testimony is sufficient to meet the contention of the appellee, yet a jury question is not presented. It is to be remembered that the oral agreement, alleged in the amendment to the petition, was entered into, if at all, at the time Olson negotiated for the policy on the first Chevrolet car above named. Consequently, when the written policy, in response to Olson's application, was delivered by appellant to appellee through the agent at Bode, the oral negotiations were all merged in the written contract. Moore v. State Insurance Company, 72 Iowa 414; Stephens v. Capital Insurance Company, 87 Iowa 283; Cornelius v. Farmers Insurance Company, 113 Iowa 183; Phillipy v. The Homesteaders, 140 Iowa 562; Iowa Business Men's Building & Loan Association v. Fitch, 142 Iowa 329; Murphy v. Continental Insurance Company, 178 Iowa 375; McCoy v. National Life Insurance Co., 192 Iowa 127. Upon this subject, we said in Moore v. The State Insurance Company (72 Iowa 414), supra, reading on page 416:

"* * * if there was such a preliminary agreement as counsel claim, its terms and conditions were superseded by the policy, which is the final contract showing the meeting of the minds of the parties. We must enforce it, and not the preliminary agreement."

Likewise, this court declared in Cornelius v. Farmers Insurance Company (113 Iowa 183), supra, reading on page 186:

"Talks and agreements in reference to matters of future performance are merged in, and presumed to be expressed in, the policy, which, as in the case of other written contracts, becomes effective as the consummation of their wishes and intentions by its delivery on the part of the company and acceptance by the assured."

Continuing on page 187, we further approved the following language:

" 'The policy was the conclusion of the bargain, and its acceptance would exclude any parol promises inconsistent with it.' "

Under the written terms and provisions in the policy issued by appellant and accepted by appellee, there was no stipulation whereby the document must be transferred to another car. A transfer, if any were to be made, was merely optional with the appellant. Thus it is apparent that no agreement existed between appellant and Olson for the claimed automatic transfer unless it be found in the alleged oral contract. Such agreement cannot there be found as a separate and independent contract, because the preliminary negotiations, under the authorities above cited, merged in the written contract between the parties. If the written contract did not correspond with the application or preliminary negotiations, Olson could have rejected the policy offered. He did not do so, but accepted it. Hence, he is bound thereby. Therefore, there is no issue here which should have been submitted to the jury.

III. An argument is made by appellee that the oral agreement could be enforced because the appellant, through its conduct, has estopped itself from denying the same. This proposition is based upon the theory that appellant permitted its agent at Bode to make oral contracts.

Assuming that this is true, nevertheless, if the oral contract, as in the case at bar, amounted to preliminary negotiations and an application for insurance, the same would be merged in the written policy of insurance which followed. But it is said by appellee that representations were made to Olson to the effect that he would have insurance on the new car because the insurance policy would automatically transfer from the old to the new. Thereby appellee says that Olson was lulled to sleep and did not procure other insurance. Conceding, without determining, that such representations were made to Olson, nevertheless they related entirely to the future. There is no claim that the appellant, through its agent or otherwise, misled Olson concerning any past or existing fact. So, when the appellant offered Olson the insurance policy in response to his application and the preliminary agreements, he had the option of accepting or rejecting it. If he accepted the policy, that settled the controversy so far as the issues here involved are concerned. In Cornelius v. Farmers Ins. Co. (113 Iowa 183), supra, reading on pages 186 and 187, we approved the following language by the

Supreme Court of the United States, in Insurance Co. v. Mowry, 96 U. S. 544, 547:

"But the doctrine (of estoppel) has no place for application when the statement (of the one estopped) relates to rights depending upon contracts yet to be made, to which the person complaining is to be a party. He has it in his power in such cases to guard in advance against any consequences of a subsequent change of intention and conduct by the person with whom he is dealing. For compliance with arrangements respecting future transactions, parties must provide by stipulations in their agreements when reduced to writing. The doctrine carried to the extent for which the assured contends in this case would subvert the salutary rule, that the written contract must prevail over previous verbal arrangements, and open the door to all the evils which that rule was intended to prevent."

Then, if Olson, in the case at bar, found the policy offered inconsistent with the preliminary negotiations and the application therefor, it was incumbent upon him to reject the same. Having the option to reject the policy, but failing to exercise it, Olson cannot say that the insurance company is estopped from enforcing the terms of the written instrument embodied in the policy on the theory of estoppel. Responding to Olson's application for insurance, the appellant offered a policy. Olson accepted the offer. Consequently, he is bound by it. The policy does not contain a provision for the transfer. Therefore, Olson is not entitled to the transfer until in the future he meets the conditions required by the company to accomplish a transfer.

Apparently after the accident happened, Olson asked appellant's agent at Bode for some sort of a transfer. Appellant was willing to place a rider upon the policy affecting future accidents, but, of course, was not willing to assume past liability which accrued before a transfer was perfected. There is nothing in the record to indicate an estoppel against the appellant. Once more it is manifest that there is no question here for the jury's consideration.

IV. Yet, it is said by the appellee that the preliminary negotiations aforesaid were not merged in the policy because those preliminary talks amounted to and constituted a supplemental contract in addition to the policy.

Manifestly there is no basis in the record for this contention, but assuming, nevertheless, that there is such basis, even then appellee could not recover because appellant's agent at Bode had no authority to make such oral contract. Much is said in the argument by appellee to the effect that appellant's agent at Bode frequently accepted oral applications for insurance. As a matter of fact, the agent on an occasion or two signed the applicant's name to the written application and then forwarded such application thus signed to the appellant. The insurance policies were returned to the agent upon such application, signed in the manner and way explained. Assuming, however, that the agent had authority to take oral applications, this in no way would indicate that he had the power to make an oral contract of insurance for a future term as distinguished from mere preliminary insurance. See upon the general subject Neiman v. Hawkeye Sec. Fire Ins. Co., 205 Iowa 119; Continental Insurance Co. v. Schulman (Tenn.), 205 S. W. 315; Scrbinoff v. Wolverine Mutual Motor Insurance Co., 218 N. W. 776 (Mich.); Stout v. Mutual Benefit Life Insurance Co., (Mich.) 218 N. W. 669; Gambino v. Northern Insurance Co., (Mich.) 205 N. W. 480; Martin v. Capital Insurance Co., 85 Iowa 643; Kirkman v. The Farmers' Insurance Co., 90 Iowa, 457; Dryer v. Security Fire Ins. Co., 94 Iowa 471; Elliott v. Farmers Insurance Co., 114 Iowa 153; Taylor v. State Insurance Co., 98 Iowa 521; Cornelius v. Insurance Company (113 Iowa 183), supra; Murphy v. Continental Insurance Co. (178 Iowa 375), supra.

According to the policy in question, appellant's agent at Bode was prohibited from making the contract in question. However, it is contended by appellee that Section 9004 of the present Code, similar to the corresponding section in the 1897 Code, contains the following provision:

"Any officer, agent, or representative of an insurance company doing business in this state who may solicit insurance, procure applications, issue policies, adjust losses, or transact the business generally of such companies, shall be held to be the agent of such insurance company with authority to transact all business within the scope of his employment, anything in the application, policy, contract, by-laws, or articles of incorporation * * * notwithstanding."

That section of the statute, however, does not make appellant liable in the case at bar. Here, according to the record, appellant's agent at Bode was merely a soliciting agent. It is true he may have accepted oral applications for insurance, but he had no power to make insurance or transfer contracts. There is nothing to indicate that said agent ever previously made an insurance or transfer contract. When the so-called oral applications were received, the agent filled out a written application and signed the applicant's name thereto. This was forwarded to the appellant company and it, in return, issued the policy. Clearly, under the record, the appellant's agent at Bode had no authority or power to bind the company in the manner and way contemplated by appellee, either through estoppel or otherwise.

This conclusion is consistent with Johnson v. Farmers Insurance Company, 184 Iowa, 630, and other cases relied upon by appellee. In the Johnson case, supra, suit was brought upon the theory that the agent was negligent in not forwarding the application and premium to the insurance company. Freedom from contributory negligence was pleaded by the insured, and the case tried upon mere issues of negligence. That was quite different from appellee's allegations that it has an oral contract of insurance. For the purpose of being fully understood, it is here suggested that this suit does not involve a reformation of the insurance contract, a suit to recover premiums paid, a suit to recover unearned premiums, a proceeding to cancel an insurance policy because it does not conform with the application or preliminary agreement, an action to recover for negligence because the agent failed to forward an application to the insurance company, or an attempt to recover on any other theory except that specifically set forth herein.

Our discussion has proceeded upon the theory that there may be, under certain circumstances, oral insurance. Whether there can be oral insurance for a term, as distinguished from a preliminary period before the issuance of the policy, under the present statute requiring written policies, we do not now decide. See, however, Revere Fire Insurance Co. v. Chamberlin, 56 Iowa 508; Sater v. Insurance Co., 92 Iowa 579; House v. Security Fire Insurance Co., 145 Iowa 462. Regardless of the assumption, nevertheless appellee cannot recover in this case even on the theory of an oral insurance contract, because the

agent, if he attempted to make the alleged oral contract of insurance or the transfer of the existing policy, did not have the authority to do so. So far as this proposition is concerned, then, no jury question is involved.

V. Much is said in argument by appellee to suggest that it may rely upon a later oral contract wherein the appellant's agent agreed to transfer the policy in question from the old automobile to the new. This last-named oral contract arose, appellee contends, between the appellant and Olson after the first car had been sold and the new automobile purchased. It is rather difficult to ascertain the exact theory upon which appellee proceeds. Therefore attempt has been made to discuss all possible theories. Assuming, then, that appellee is contending for the oral contract made at the late date above mentioned, it is obvious that a jury question is not involved. This is true for the reason that appellee did not plead this late contract, but in her petition and the amendment thereto relied upon the original, written policy or the oral contract discussed in the division just above. Consequently, there is no jury question under the theory now being discussed. Nor do the pleadings present a jury question under the doctrine that appellant is bound by its agent's "implied or apparent authority to make a valid" oral "agreement for preliminary insurance effective on the signing and forwarding of the application, and until the application should be accepted or rejected by the company." As to whether or not, under any event, there could be a recovery on that theory, we do not suggest or decide. See generally, however, Nertney v. National Fire Insurance Co., 199 Iowa 1358.

After a review of the entire record, therefore, it is apparent that no jury question is presented, and the appellant's motion for a directed verdict should have been sustained.

Because the district court overruled appellant's motion for a directed verdict, the judgment entered below must be, and hereby is, reversed.—Reversed.

WAGNER, C. J., and EVANS, MORLING, and GRIMM, JJ., concur.