EDWARD GARTON, Appellant, v. PHOENIX INSURANCE COMPANY, of Hartford, Connecticut, Appellee.

No. 41530.

APRIL 4, 1933.

1214

O. M. Slaymaker and R. E. Killmar, for appellant.

D. Cole McMartin and Murrow & Miles, for appellee. `

ALBERT, J.—The policy sued on herein, issued by defendant to plaintiff on March 7, 1929, was a three-year policy with the premiums paid in full. It covered household goods located on the southeast quarter of section 8, township 69, range 23, Wayne county, Iowa. These household goods were moved by the plaintiff to a residence property owned by him in the town of Humeston on or about June, 1930, and were destroyed by fire while in the Humeston house on November 16, 1930.

The defendant refused to pay the loss to the plaintiff on two grounds:

First, that the changed location of the household goods was without the consent of the defendant; and, second, that the plaintiff, having signed an application for the insurance, was estopped from claiming any other or different agreement or statement than those contained in the policy.

Plaintiff's reply, in substance, was:

First. That the defendant's agent was told when the application was taken, that the household goods would be removed to a new location before the policy would expire, and plaintiff wanted the policy so written as to cover the household goods at either location, and the agent agreed that the policy would be so written.

Second. With the knowledge of the facts above stated in No. 1, defendant executed and delivered the policy in suit and collected the premium of $43, and still retains the same.

Third. That the plaintiff never read the policy and relied upon the same covering the household goods in the new location and never discovered otherwise until after the fire.

The application for this policy covered property other than household goods, including grain, horses, and mules, cattle, calves, etc. This suit, however, only involves the provision in the policy of $500 covering household furniture and fixtures, and described all the property to be situated on the quarter section of land above described. There is no statement or reference in the application as

to the moving of this property to the town of Humeston, and the policy issued is in strict compliance with the application. It is the Iowa standard form of fire insurance policy provided by statute (Code 1931, section 9018), and provides, among other things, that "unless otherwise provided by agreement of this company, this policy shall be void * * * (h) if the property insured or any part thereof (as to the part so removed) be removed to any other building or location than that specified in the policy."

The defense made on the part of the company is based on the above provision of the policy, and it alleges that the same was void because of the change in the location of the household goods insured. As shown by the reply of the defendant, above referred to, the effect of the plea of change of location was sought to be avoided by showing that, at the time the application was made, plaintiff advised the agent that he expected to move the property to the location in the town and said he wanted the policy to cover both locations; that the agent prepared the application which did not contain said statement or agreement, but said agent agreed that he would get a policy that covered both locations; that plaintiff did not read the application when he signed the same, and did not read the policy when he received it, and did not know that it did not contain the provision covering both locations until after the fire.

As to the testimony offered by the plaintiff to show these statements and agreements at the time the application was made, objection was made, and the court refused to allow any testimony on the issue thus made. The agent in question is concededly a soliciting agent, and the error relied upon for reversal is the refusal of the court to permit the plaintiff to introduce the evidence which he tendered to support this issue. The court directed a verdict for the defendant.

Some confusion exists in our earlier cases where this or a similar question is involved, but in the case of Wensel v. Property Mutual Insurance Association of Waterloo, 129 Iowa 295, 105 N. W. 522, 523, we cleared up such confusion and said:

"After much controversy and doubt regarding the rule for such cases, we have settled these two propositions in some of our recent opinions: The first is that if the agent of an insurance company has knowledge of past conditions or existing facts avoiding a policy which is secured by him, by reason of such facts being within

certain prohibitions which presently avoid the policy, the company issuing the policy with this knowledge on the part of its agent cannot insist upon these facts for the purpose of avoiding liability. [Citing cases.] Second. Knowledge of a soliciting agent of the future intentions of the insured as to violating some of the conditions of the policy as written is not binding upon the insurer, and cannot be relied upon, for the purpose of avoiding the terms and conditions of the policy as issued", citing Baldwin v. Ins. Co., 60 Iowa 497, 15 N. W. 300; Sowers v. Ins. Co., 113 Iowa 551, 85 N. W. 763; Cornelius v. Ins. Co., 113 Iowa 183, 84 N. W. 1037; Andrus v. Casualty Co., 91 Minn. 358, 98 N. W. 200.

In House v. Security Fire Ins. Co., 145 Iowa 462, 121 N. W. 509, 512, we had the question of the claimed avoidance of a policy by reason of the breach of the provision therein which prohibited the incumbrance of the same after the issuance of the policy. We said:

"The Harrington mortgage was not issued until about 11 months after the delivery of the policy. Cranshaw [the agent] * * * may have known that it was plaintiff's intention to thereafter make another loan of $2,000; but he (Cranshaw) did not undertake to get it for him, nor did he know when, if ever, such a loan would be made. Surely there was nothing to indicate that this additional loan was to be presently secured, and in fact it was not. The placing of the subsequent mortgage upon the property was a clear violation of the terms of the policy, and Cranshaw had no authority to promise in advance that this subsequent breach of condition would be waived."

In McCoy v. National Life Ins. Co., 192 Iowa 127, 182 N. W. 659, the deceased had a 20-payment life endowment plan policy which contained a provision that, in case of the death of the insured while engaged in or as the result of military or naval service in time of war, without such permit (from the company), the liability of the company should be limited to the reserve therein; and the policy further provided that, to obtain such permit, an additional premium was to be paid. The deceased was killed while in the service of the government in France. It was claimed that the local soliciting agent, through whom the policy was obtained in the first instance and later through whom certain riders were put on the

policy, advised him (the insured) that the company was not insisting on this prohibition, and the beneficiary, the wife of the deceased, and the deceased, when calling on the soliciting agent in connection with the matter of putting on additional riders referring to other matters than the military service, told the soliciting agent that he (the deceased) had been drafted and expected to be called into the service at any time. The local agent said that the policy was "all right" and they would not have to pay any more money. The substance of the opinion in the McCoy case is that there was not sufficient proof of authority of the agent, and the agent was not properly authorized to waive the conditions of the policy, and all agreements between the agent and the assured were merged in the policy, and the policyholder must be held to know all of the conditions and provisions of an executed and delivered contract, and, under such circumstances, the company had no notice of the future intention of the assured, and therefore the same was not binding on the company.

In Neiman v. Hawkeye Securities Fire Insurance Co., 205 Iowa 119, 217 N. W. 258, we considered a case where the alleged violation of the prohibition in the contract was the one providing against the change of title, interest, possession, or the assignment of the policy, and the substance of the holding was that the knowledge and promise of an agent, working for the general agent and employed by the insurance company, with no authority except to solicit insurance for the principal or general agent, may not be imputed to the insurance company.

Chambers v. Home Mutual Ins. Ass'n., 214 Iowa 1353, 242 N. W. 30, 31, was a case in which one Olson owned a Chevrolet car on which a policy of liability insurance was issued. Olson sold the car covered by the policy and purchased a new one. The new car was not named in or covered by the original policy issued by the company. It was damaged, and recovery was sought on the theory that, at the time the policy was issued, there was an oral agreement with the soliciting agent that the policy should be transferred from the car there described to any subsequent car of that kind purchased by Olson. In relation to this situation we said:

"Consequently, when the written policy, in response to Olson's application, was delivered by appellant to appellee through the agent at Bode, the oral negotiations were all merged in the written contract" (citing numerous Iowa cases).

The question was then quite fully discussed, and the opinion continued, quoting from Union Mut. L. Ins. Co. v. Mowry, 96 U. S. 544, 24 L. Ed. 674:

"But the doctrine (of estoppel) has no place for application when the statement (of the one estopped) relates to rights depending upon contracts yet to be made, to which the person complaining is to be a party. He has it in his power in such cases to guard in advance against any consequences of a subsequent change of intention and conduct by the person with whom he is dealing. For compliance with arrangements respecting future transactions parties must provide by stipulations in their agreements, when reduced to writing. The doctrine, carried to the extent for which the assured contends in this case, would subvert the salutary rule that the written contract must prevail over previous verbal arrangements, and open the doors to all the evils which that rule was intended to prevent."

We further said in the above case:

"If Olson, in the case at bar, found the policy offered inconsistent with the preliminary negotiations and the application therefor, it was incumbent upon him to reject the same. Having the option to reject the policy, but failing to exercise it, Olson cannot say that the insurance company is estopped from enforcing the terms of the written instrument embodied in the policy on the theory of estoppel. Responding to Olson's application for insurance, the appellant offered a policy. Olson accepted the offer. Consequently, he is bound by it. The policy does not contain a provision for the transfer. Therefore Olson is not entitled to the transfer until in the future he meets the conditions required by the company to accomplish a transfer. * * * Yet it is said by the appellee that the preliminary negotiations aforesaid were not merged in the policy because those preliminary talks amounted to and constituted a supplemental contract in addition to the policy."

In Dryer v. Security Fire Ins. Co., 94 Iowa 471, 62 N. W. 798, 799, we had a case before us involving practically the identical situation we have in the case at bar. The policy in that case covered household furniture, etc. There was a loss on the policy, and the company refused payment on the ground that the property insured had been moved from the location described in the policy. The policyholder was a German, unable to read or write the English

language. The policy conformed to the application. The policy-holder claimed in that case, as in this, that, when the agent was preparing the application, he (the applicant) said he was apt to move the 1st day of March and had better wait before insuring until he was settled; that the agent told him it would make no difference so long as he remained in the county, and he (the agent) would fix it all right for him so it would be effectual wherever he might move in the county. We said in that case that the agent appeared to have been only a soliciting agent, and "if that was his true character it was no part of his duty, and not within the scope of his powers, to contract for his principal, to construe its policies, or to determine their legal effect. As he was a special agent, not clothed with any apparent right to do more than to solicit insurance, and to perform such acts as were incident to that power, the plaintiff was charged with knowledge of the limitations of his agency, and was not authorized to give any contractual effect to the statements he made. His principal was bound by the knowledge he had when the application was prepared and accepted, but not by statements he made outside the scope of his apparent powers."

The doctrine of the Dryer case was reiterated and applied in the case of Murphy v. Continental Ins. Co., 178 Iowa 375, loc. cit. 377, 157 N. W. 855, L. R. A. 1917B, 934, also approved in Winchell v. Iowa State Ins. Co., 103 Iowa 189, loc. cit. 192, 72 N. W. 503, and Schoep v. Bankers Alliance Ins. Co., 104 Iowa 354, 73 N. W. 825.

The plaintiff relies on the case of Travelers Ins. Co. v. Farmers Mutual Fire Ins. Ass'n, 211 Iowa 1051, 233 N. W. 153. That case, however, is a suit in equity to set aside a purported cancellation of an insurance policy, and reformation of the terms of the policy was prayed. He also relies upon the case of Smith v. National Fire Ins. Co. of Hartford, 201 Iowa 363, 207 N. W. 334, which was also a suit in equity to reform a contract. These cases are reformation cases and give us no aid on the question involved here.

In the case of Winsor & Son v. Mutual Fire & Tornado Ass'n, 170 Iowa 521, 153 N. W. 97, there was no provision in the policy prohibiting the removal of the personal property. The policy covered horses and mules which were used in connection with a drainage outfit, and the claim was that, by taking these animals to the state of Missouri to execute a contract for excavating ditches, the policy was thereby voided. After the company had notice and knowledge

1220

of such moving of said property, it collected assessments and premiums from the plaintiff. The home of the insured parties at all times remained at Laurens, Iowa, where they regularly returned and kept horses and mules when their contract work was completed. The court held the policy good and authorized recovery. This case throws no light on the question we have before us.

Plaintiff also relies upon the case of DeBolt v. German American Insurance Company, 181 Iowa 671, 165 N.W. 55. The alleged violation of the terms of the policy in that case was the taking of additional insurance. The claim of the plaintiff was that the talk about the taking of additional concurrent insurance expressed a present, existing fact and not a future intention. The receipt of premiums, after the company had been notified of the taking of additional insurance, was the basis for the conclusion in the case that the defendant had waived this provision of the policy, and was estopped from asserting and claiming any advantage under that provision. Some things are said in that case that are in line with the holding now made, but the same are largely argumentative, and, if they conveyed the idea contended for by the plaintiff, the same are not in line with our previous holdings on this subject.

We conclude that the action of the court in excluding this testimony and directing a verdict for the defendant was right.—Affirmed.

KINDIG, C. J., and EVANS, STEVENS, UTTERBACK, and DONEGAN, JJ., concur.